IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LILIYA TURUBCHUK, *individually and as personal representative of the Estate of Aleksey Turubchuk, deceased,* VLADIMIR NEMSTOV, *as parent and guardian of E. Nemtsov (a minor) and V. Nemtsov (a minor)*, LUDMILA NEMTSOVA, and IRINA TURUBCHUK,<br><br>  Plaintiffs,<br><br>v.<br><br>E. T. SIMONDS CONSTRUCTION COMPANY and SOUTHERN ILLINOIS ASPHALT COMPANY, INC.,<br><br>  Defendants. | Case No. 3:12-cv-594-SMY-DGW |

**ORDER**

**WILKERSON, Magistrate Judge:**

Now pending before the Court is the Motion to Compel Responses to Requests for Admission filed by Plaintiffs on February 6, 2015 (Doc. 121). For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

On August 21, 2015, Plaintiffs were involved in a single car accident on Interstate 24 in Johnson County, Illinois that resulted in a death and significant injuries to the survivors. At the time and location of the accident, the roadway was being re-paved by Defendants E. T. Simonds Construction Company ("ETS") and Southern Illinois Asphalt Company, Inc. On March 26, 2007, Plaintiffs filed suit against Defendants in this Court, captioned 3:07-cv-216-WDS-CJP, *Liliya Turubchuk, et al., v. E. T. Simonds Construction Company and Southern Illinois Asphalt Company, Inc.* ("2007 Case"). The parties entered into a settlement agreement and the case was

dismissed on February 28, 2008.

Plaintiffs now believe that the settlement in the 2007 Case was the result of fraud and misrepresentation. Plaintiffs contend that they were informed in the 2007 Case by Defendants that they were acting as joint-venturers and that they were insured only up to $1,000,000 – inducing Plaintiffs to settle for a less than desirable amount. Plaintiffs now believe that Defendants had other insurance agreements, as separate companies, that would have been available to pay damages in the 2007 Case. In particular, Plaintiffs contend that Defendants were acting as individual entities at the time of the accident and that additional liability insurance policies, which could have satisfied a judgment, should have been disclosed to them.

Plaintiffs served upon Defendants requests to admit related to their communications with their insurance companies and a previous attorney related to the 2007 Case. Defendants have objected on, in part, privilege grounds, insurer/insured privilege and attorney/client privilege.[1] Plaintiffs seek to compel answers (Doc. 121). In response, Defendant Southern Illinois Asphalt Company, Inc. has withdrawn its objections and tendered amended responses (Doc. 122). Defendant ETS, however, has filed a response claiming both privileges in addition to arguing that other objections, as to definitions and requests for legal conclusions, should be sustained. The parties do not list, in their papers, the insurance agreements (or insurers) that are relevant to the discovery requests or the asserted privileges. From ETS's responses to discovery requests, it appears that it was insured, individually, by a Commercial Umbrella Liability Policy, the Bituminous Policy (CLP 3208230B),[2] and/or a Zurich Policy (Doc. 121-4, p. 2).[3] Each of these

---

[1] These include requests 14, 15, 20-30, 33, 34, and 36-38 served upon E.T. Simonds and requests 13-17, 22-26, 31-35, and 40-44 served upon Southern Illinois Asphalt Company, Inc. (Doc. 121-1 and 121-2).

[2] Also named the "Street & Road Contractor Policy" (Doc. 121-1, p. 4).

policies, according to ETS, excluded coverage of the joint venture (*Id.*). They were issued by American Guarantee & Liability Insurance Company and Bituminous Casualty Corporation.

## DISCUSSION

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Rule 36 further allows for requests to "admit . . . the truth of any matters within the scope of Rule 26(b)(1)." This Court enjoys broad discretion in resolving discovery disputes. *Spiegla v. Hull*, 371 F.3d 928, 933 (7th Cir. 2004).

### *Privileges*

In this diversity action, the applicability of a privilege is governed by state law. FED.R.EVID. 501. As a part of the attorney-client privilege, the State of Illinois recognizes the privileged nature of communications between an insured and in insurer because, in part, of defense clauses contained in insurance agreements. *People v. Ryan*, 197 N.E.2d 15, 17 (Ill. 1964). In order to claim the privilege, the party asserting the privilege must show: "(1) the identity of the insured, (2) the identity of the insurance carrier, (3) the duty to defend a lawsuit, and (4) that a communication was made between the insured and an agent of the insurer." *Holland v. Schwan's Home Service, Inc.*, 992 N.E.2d 43, 85 (Ill. App. Ct. 2013). The privilege is to be "strictly confined within its narrowest possible limits." *Id.* (quotation marks, citation, and emphasis omitted); *Sharp v. Trans Union L.L.C.*, 845 N.E.2d 719, 726 (Ill. App. Ct. 2006) ("In the context of the relationship between insurer and insured, Illinois adheres to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit" (quotation marks, editing marks, and citation omitted)). And, the privilege "applies

---

[3] In their papers, the parties do not make clear whether the "Zurich Policy" and that "Commercial Umbrella Policy" are one-and-the-same. It appears, however, that they are (Doc. 106, p. 6 – referring to a "Zurich Commercial Umbrella Liability Policy").

only when the insured may properly assume that the communication is made to the insurer for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *Id.* (quotation marks, citation, and emphasis omitted).

ETS argues that its communications with Bituminous Insurance Company is governed by the privilege because that insurance company had a duty to defend the joint venture in the underlying lawsuit; and, it retained an attorney, Richard Green, to represent the joint venture (Doc. 118-29, p. 2). ETS further argues that Plaintiffs have inconsistently argued in a Motion for Summary Judgment (Doc. 106), that Defendants' individual insurance policies would and should have provided coverage in the underlying lawsuit. Both of these arguments are without merit.

First, ETS argues that communications with Bituminous Insurance Company ("BIC") is privileged because it represented the joint venture in the 2007 Case. Defendant does not explain, however, how BIC's communications with a joint venture are subject to a privilege that ETS can assert as an individual entity. While "[j]oint ventures are not distinct legal entities," *Peabody-Waterside Development, LLC v. Islands of Waterside, LLC*, 995 N.E.2d 1021, 1024 (Ill. Appp. Ct. 2013), ETS does not provide any explanation or legal authority that a privilege that inures to the joint venture can also extend to ETS as a member of that joint venture.[4] In light of the strict construction of this privilege, ETS must do more than just assert that the privilege applies. As noted above, the privilege applies when the dominant purpose of the communication is made to secure an attorney to protect the interests of the insured. In the 2007 case, the dominant purpose of any communication was to protect the joint venture, not ETS. Any communication regarding ETS as an individual company, then, would not be protected. Second, it appears that

---

[4] For example, ETS has not provided the Court with a copy of the Joint Venture agreement or any case authority that states that a member of the joint venture could unilaterally assert a privilege on behalf of the joint venture (especially since Southern Illinois Asphalt Company, Inc. has seemingly waived such a privilege) .

Page **4** of **10**

ETS had an individual policy with BIC, separate from BIC's joint venture policy. There is no claim that communications as to that separate policy are privileged. And, ETS makes no showing that there was a duty to defend ETS in the 2007 Case such that its communications with BIC would be privileged. Finally, ETS' communications with other insurance companies are not privileged because there has been no showing (by ETS) that they had a duty to defend.

ETS does argue that Plaintiff cannot both assert that the insurance companies had a duty to defend (in summary judgment motions) while at the same time seek an Order that no privilege applies because there was no duty to defend. To support this claim, ETS cites to *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510 (3rd. Cir. 1953), for the proposition that "'a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits.'" *Id*. at 513 (quoting II Freeman on Judgments Sec. 631 (5th ed. 1925)); *See also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (citations omitted)). In their Motion for Partial Summary Judgment, Plaintiffs seek "a summary determination that the newly disclosed policies of insurance would have provided coverage for the claims made in the Underlying Complaint" (Doc. 106, p. 3). In the pending Motion, Plaintiffs seek an order finding that Defendants have failed to show a duty to defend that would render the privilege applicable.

First, the differing burdens of proof in the discovery dispute and the motion for summary judgment make reliance on this argument problematic. Regardless of Plaintiffs' arguments, it remains that in order for *Defendant* to assert the privilege, *it* must show that the insurance companies had a duty to defend. For obvious reasons, Defendants are unwilling to make or argue

such a showing. So, regardless of what Plaintiffs must show and prove in order to prevail on their fraud counts, Defendant, on this issue, bears the burden of proof. Judicial estoppel, then, is an unavailing argument. The insurer-insured privilege objections to the requests to admit (14, 15, 20-30, 33, 34, and 36-38) are **OVERRULED**.

ETS also asserted the attorney-client privilege with respect to its answers to requests to admit. The purpose of the attorney-client privilege is to "encourage and promote full and frank communication between the client and his or her attorney, without the fear that confidential information will be disseminated to others." *People v. Radojcic*, 998 N.E.2d 1212, 1221 (Ill. 2013). The burden is on Defendant to show that the privilege applies. *In re Marriage of Decker*, 606 N.E.2d 1094, 1108 (Ill. 1992); *Doe v. Township High School Dist. 211*, 34 N.E.3d 652, 667 (Ill. App. Ct. 2015). "The privilege is to be strictly confined within its narrowest limits and limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such." *Center Partners, Ltd. V. Growth Head GP, LLC*, 981 N.E.2d 345, 356 (Ill. 2012) (citing *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 579 N.E.2d 322 (Ill. 1991). In its brief, ETS focuses on discovery requests related to Richard Green. Therefore, its objections, on attorney-client privilege grounds, to requests to admit 14, 15, and 20-30 are **OVERRULED**.

In the remaining requests (33, 34, and 36-38), Plaintiffs seek information on the communications between Mr. Green and ETS. None of these requests, except 36 and 38, seek disclosure of actual communications; rather, they seek information on whether Mr. Green apprised ETS of the status of the 2007 Case, i.e. whether or not they talked. That is, the requests do not

seek the content of the communication. Objections on attorney-client privilege grounds to requests to admit 33, 34, and 37 are accordingly **OVERRULED**.

Requests to admit 36 and 38 state: "Admit that Defendant cooperated with Mr. Green in the defense of the Underlying Action" and "Admit that Defendant consented to the settlement in the Underlying Action as a result of Mr. Green's communications with Defendant." In its arguments on attorney-client privilege, ETS takes the conclusion that the privilege applies as a given, it does not affirmatively argue that the privilege applies. Instead, it only attempts to counter Plaintiff's arguments that the privilege has been waived. The initial burden of showing that the privilege applies is on Defendant and it has presented no direct and specific argument that any of its communications with Mr. Green are privileged. For this reason alone, the privilege does not apply as to these requests.

In any event, Plaintiff argues that the privilege has been waived. Only ETS can waive the privilege, through testimony or by "inject[ing] into the case either a factual or legal issue, the truthful resolution of which requires examination of confidential communications . . . ." *Central Partners, Ltd.*, 981 N.E.2d at 356. When such a voluntary waiver is made, not only is there a waiver of a specific communication, but also a waiver of other communications related by subject matter. *Id.* at 356-357. Part of ETS' defense is that it is not liable for the actions of Mr. Green in the 2007 Case (Doc. 118, p. 12). ETS argues that "where a plaintiff seeks to hold a client vicariously liable for the attorney's allegedly intentional tortious conduct, a plaintiff must prove facts demonstrating either that the client specifically directed, controlled, or authorized the attorney's precise method of performing the work . . ." (Doc. 118, p. 13). It goes on to argue that "[t]here is no evidence that any representations were ever made by ETS or SIAC to Richard Green that could constitute direction, control or authorization . . ." (*Id.*). Essentially, ETS contends that

Mr. Green acted independently and it is not liable because it did not ratify, direct, or approve his actions. This constitutes waiver of the attorney-client privilege. ETS' communications with Mr. Green are necessary to determine whether it committed fraud in the 2007 Case either by withholding information from Mr. Green or ratifying the information that Mr. Green supplied to Plaintiff's in the 2007 Case. ETS contends that it had no communications with Mr. Green as to the underlying Rule 26 disclosures (both in its briefs and in deposition testimony) – Plaintiffs are entitled to test this statement of fact through discovery.[5] As such, objections on attorney-client privilege grounds to requests to admit 36 and 38 are **OVERRULED**.

*Other Objections*

Finally, ETS objects to various definitions and on the basis that the requests seek legal conclusions. As to definitions, ETS objects to the phrases: "Defendant," "Underlying Action," "Joint Venture," and the related "You and/or Your." Some of the definitions do appear overly broad. In order to resolve these definitions, the following is **ORDERED**:

> 1. The term "Defendant" includes Defendant E.T. Simonds Construction Company ("Defendant Simonds"), as well as its officers, directors, attorneys and any others standing in a representative relationship to Defendant.
>
> The Court expects the parties to reasonably infer that Plaintiff is attempting to encompass the company and any person who has apparent authority to legally bind or speak on behalf of the company. The term "you and/or your" is similarly modified.

---

[5] ETS cites to *Beneficial Franchise Co., Inc. v. Bank One, N.A*, 205 F.R.D. 212 (N.D. Ill. 2001), a case that has no precedential authority. That case, however, cites to *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3rd Cir. 1994), which states that: "Courts have found that by placing the [attorney] advice in issue, the client has opened to examination facts relating to that advice." *Id.* at 863. That Court went on to state that: "The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id*. ETS' defense is, essentially, that it had no knowledge of what Mr. Green was doing. ETS' deponents testified that they relied on Mr. Green to defend the underlying suit and described their communications with Mr. Green as being non-existent. Plaintiffs, through their requests to admit, are attempting to test that representation, which is made by ETS through deposition testimony and in its briefs before this Court.

2. The term "Underlying Action" refers to Plaintiffs' original action for damages for personal injuries filed in the U.S. District Court for the Southern District of Illinois against the above named defendants, on or around March 29, 2007, under Cause No. 07-216-WDS, a copy of the Complaint of such action is attached as Exhibit A.

Notwithstanding the attachment of the Complaint, it is clear that Plaintiffs are referring to the 2007 Case.

3. The term "Joint Venture" refers to the joint venture allegedly formed by E.T. Simonds Construction Company and Southern Illinois Asphalt Company, Inc. on or around August 23, 2004 or before, with respect to the Illinois Department of Transportation project known as Contract No. 98836.

To the extent that ETS objected to these definitions, they are **OVERRULED IN PART** and ETS shall respond with the above definitions in mind.

ETS also objects to requests 4, 6-12, 17-19, 22-31, 33, 35, 36, 41, 46, 49-52, 54 and 55 as seeking legal conclusions. Requests to admit can seek "facts, the application of law to fact, or opinions about either." Fed.R.Civ.P 36(a)(1)(A). Requests to admit, however, are not tools to extract legal conclusions. *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). Plaintiffs do not offer any specific argument as to any of the specific objections made by Defendant. With this in mind, the Court finds that various requests seeking admissions, as to whether ETS was liable to Plaintiff in the 2007 Case, whether insurance policies covered the claims made in the 2007 Case, and ETS' legal responsibilities, are all seeking legal conclusions. Therefore, the Court will not compel answers to Requests 4, 6-8, 10-12, 17-19, 31, 35, 46, 49, 50, 51, 52, 54, and 55. Defendant's objection on legal conclusion grounds as to these requests to produce are **SUSTAINED**.

The following requests do not seek legal conclusions as asked or as modified by the Court. Requests 9, 23, 26, 36, and 41 shall be answered as written. Requests 22, 25, and 28 shall be read to ask, for example, "Admit that Defendant notified American Guarantee & Liability Insurance

Company of the Underlying Action." Defendant shall provide an answer to this modified request. Requests 24, 27, and 30 shall be read to ask, for example, "Admit that Defendant sought defense of the Underlying Action from American Guarantee & Liability Insurance Company." Defendant shall provide an answer to this modified request. As to request 29, it shall read: "Admit that Defendant filed a claim with Bituminous Casualty Corporation with regard to the Underlying Action." Defendant shall provide an answer to this modified request. Finally, request 33 shall be read: "Admit that Mr. Green kept Defendant informed about the status of the defense of the Underlying Action." Defendant shall provide an answer to this modified request. Defendant's objections as to these requests for admission on legal conclusion grounds are **OVERRULLED**.

## CONCLUSION

For the foregoing reasons, the Motion to Compel Responses to Requests for Admission filed by Plaintiffs on February 6, 2015 is **GRANTED IN PART AND DENIED IN PART** (Doc. 121). Defendant ETS shall supplement its responses to the Requests to Admit by October 13, 2015 consistent with this Order.

**IT IS SO ORDERED.**

**DATED: September 30, 3015**

                                                        **DONALD G. WILKERSON**
                                                        **United States Magistrate Judge**