IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LILIYA TURUBCHUK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-594-SMY-SCW |
| | ) |
| E.T. SIMONDS CONSTRUCTION | ) |
| COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment (Doc. 106). Defendants filed responses (Docs. 125 and 126). For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## Background

In 2007, Plaintiffs filed a negligence action in this Court seeking to recover for injuries resulting from a single vehicle rollover accident which occurred on August 21, 2005 ("the underlying action") (*see* Doc. 106-1; *see also Turubchuk v. E.T. Simonds Const. Co.*, 07-CV-216-WDS). Plaintiffs sued Defendants E.T. Simonds Construction Company ("ETS") and Southern Illinois Asphalt Company, Inc. ("SIAC"), asserting that the defendants were contractors on a State of Illinois road construction project and were responsible for repaving a stretch of Interstate 24. Plaintiffs alleged that the vehicle in which they were riding went off the paved road in the construction zone, slipped off of a severe edge drop-off, left the highway and rolled. Plaintiffs further alleged that the defendants were negligent in performing the repaving.

At the time of the accident, ETS and SIAC were insured as a joint venture through an insurance policy issued by Bituminous Insurance Company, Policy CLP3216156 (policy limits

1

$1,000,000) (Doc. 106-5). ETS was individually insured by a Zurich Commercial Umbrella Liability, Policy AUC 930332403 (policy limits $10,000,000) and another Bituminous policy, Policy CLP320823B (policy limits $1,000,000) (Docs. 106-8, 106-9). Similarly, SIAC had additional insurance policies, including: Liberty Mutual Insurance Company, Policy RG-2-631-004090-605 (policy limits $2,000,000), Clarendon National Insurance Company Excess (Umbrella) Liability Policy XLB00411049 (policy limits of $2,000,000), Liberty International Underwriters Insurance Company, Excess Liability Policy LQ1-B71-073-091-051 (policy limits $25,000,000) and ACE American Insurance Company Excess Liability Policy XCP G22082589 (policy limits $25,000,000) (Docs. 106-21 - 106-24).

Following the 2005 accident, ETS notified the Tedrick Group, its insurance broker (Doc. 106-10, pp. 32-38). During his deposition, Roger Tedrick testified that the Tedrick Group opened a claim because it was their policy to put the insurance company on notice following a fatality. *Id*. The accident was immediately reported to Bituminous. *Id*. After the underlying action was filed in 2007, the Tedrick Group notified ETS's umbrella coverage insurer, Zurich, of the claim because it implicated a potential policy limits case. *Id*. SIAC also notified Bituminous and Liberty Mutual Insurance Company of the underlying action (Doc. 106-12, pp. 25-29).

Attorney Richard Green was retained to represent SIAC and ETS. Plaintiffs were represented by Komron Allahyari. On April 25, 2007, Green entered his appearance for "Defendants E.T. Simonds Construction and Southern Illinois Asphalt Company, Inc., joint venture" (*see* Doc. 118-37). On May 13 or 14, 2007, Allahyari and Green discussed the underlying action (*see* Doc. 106-4). According to Allahyari, Green affirmatively represented that the defendants were performing the repaving as a joint venture and that there was only one insurance policy, the Bituminous policy, with policy limits in the amount of $1,000,000 per

2

occurrence. *Id*. Based on his belief, following the May 13 or 14, 2007 telephone conversation with Green, that $1,000,000 represented the limits of all insurance policies applicable to the claims made by Plaintiffs in the underlying action, Allahyari made a policy-limit demand on May 14, 2007 (Docs. 106-4, 106-16, pp. 37-38).

As discussed in their telephone conversation, Green emailed Allahyari Defendants' Rule 26(a)(1) disclosures on May 15, 2007 which identified only the Bituminous joint venture policy (Doc. 106-13). Defendants never disclosed any of their other insurance policies to the plaintiffs in the underlying action (Doc. 106-14).

In his deposition taken in this case, Green testified that he did not inquire whether SIAC or ETS had any additional insurance policies (Doc. 106-14, pp. 27-28). Rather, it was his policy to identify all available insurance policies later in the discovery process after receiving interrogatories and a request to produce (Doc. 106-13, pp. 42-43). At some point following his retention Green became aware that SIAC had notified Liberty Mutual of the underlying action (Doc. 106-12, pp. 55-57, 61). However, the defendants never amended their disclosures to reflect additional insurance coverage (Doc. 106-17).

Allahyari testified that he would have withdrawn the May 14, 2007 settlement demand had he known about the additional policies (Doc. 106-4, 106-16, p. 38). The case settled for the Bituminous joint venture $1,000,000 policy limits (Doc. 106-17) and the action was dismissed at the parties' request in June 2007 (*see Turubchuk v. E.T. Simonds Const.Co.*, 07-CV-216-WDS).

Nearly six years later, Plaintiffs filed the instant action seeking damages for Defendants' failure to disclose their individual policies in the underlying action. Plaintiffs allege that if Defendants had disclosed the individual policies, Plaintiffs would not have settled for the "policy

3

limits" of the only policy disclosed to them. Plaintiffs assert claims for intentional misrepresentation, fraudulent concealment, negligent misrepresentation and constructive fraud.

## Discussion

In the present motion, Plaintiffs request that this Court find, as a matter of law, that Defendants' initial disclosures in the underlying action were inaccurate and therefore violated Rule 26. In addition, Plaintiffs seek a ruling that Defendants' violation of Rule 26 constituted either negligent misrepresentation or intentional misrepresentation. Plaintiffs further seek a summary determination that the newly disclosed policies would have provided coverage for the claims in the underlying action. Finally, Plaintiffs request that this Court find, as a matter of law, that Plaintiffs were damaged due to Defendants' failure to disclose the additional policies in that they were induced to settle the underlying action for $1,000,000 – an amount they would not have accepted if the additional insurance policies had been disclosed.

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also RuffinThompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.*

**Rule 26 Initial Disclosures**

Plaintiffs contend that the defendants' individual policies should have been disclosed in the underlying action because each defendant was named individually, not as a joint venture and that each defendant owed an independent duty of reasonable care to Plaintiffs, irrespective of the alleged joint venture. As such, their individual policies should have been disclosed pursuant to Rule 26(a)(1)(A)(iv).

On the other hand, Defendants assert that at the time of the settlement, the joint venture policy provided coverage while none of the individual umbrella/excess policies provided indemnity. Defendants further assert that no other insurance was providing a defense at the time of the settlement and therefore, they were under no obligation to produce the individual policies. Moreover, although SIAC put Liberty Mutual on notice of the suit, SIAC asserts that it had not made a claim on the policy as of the date of settlement. Liberty Mutual had been asked to open a "file only" on April 5, 2007.

Even if a joint venture relationship was established by the defendants, it did not relieve them of their individual duties to third parties, including Plaintiffs. A significant feature of a joint venture is the individual liability of the members for the acts done in the scope of the venture. "Every member of a joint venture is liable to third persons for acts of his fellow ventures done in the course of the enterprise." *Tassan v. United Development Co.,* 410 N.E.2d 902, 908 (1980) (holding that if the plaintiff could show a joint venture between a developer and contractor, the contractor would be jointly liable for the developer's breach).

The Agreement between ETS and SIAC also contemplates individual liability: "Each respective contractor shall indemnify and hold harmless the joint venture and their agents from and against all claims, damages, losses, and expenses including attorney's fees arising out of or

resulting from the performance of that contractor's work." Thus, the existence or absence of a joint venture relationship between the defendants is not determinative of their disclosure obligation under Rule 26(1)(A)(iv).

That said, the Federal Rules of Civil Procedure are to be given their plain meaning. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989). As with a statute, the Court's inquiry is complete if it finds the text of the Rule to be clear and unambiguous. *Id*. Rule 26(a)(1)(A)(iv) provides in relevant part:

> …a party must, without awaiting a discovery request, provide to the other parties:
>
> (iv) …[A]ny insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgement. *See* Fed.R.Civ.P. 26(a)(1)(A)(iv).

This provision is clear and unambiguous that **"*any* insurance agreement"** that *might* cover all or a part of a judgment entered in the case is required to be initially disclosed and produced Fed.R.Civ.P. 26(a)(1)(A)(iv) (emphasis added).

Rule 26 was amended in 1970 to require the disclosure of insurance policies. Significantly, the Advisory Committee Notes to the 1970 Amendments point out that the "[d]isclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Fed.R.Civ.P. 26, 1970 adv. com. notes, subd. b(2) (the former location of current Rule 26(a)(1)(A)(iv)). The amendment was limited to insurance coverage because, among other reasons, "information about coverage is available only from defendant or his insurer." *Id*. Disclosure is required when the insurer "may be liable" on part or all of the judgment. "Thus, an insurance company must disclose ***even when it contests liability under the policy***, and such disclosure does not constitute a waiver of its claim." *Id*. (emphasis added). "It is immaterial

6

whether the liability is to satisfy the judgment directly or merely to indemnify or reimburse another after he pays the judgment." *Id*.

Similarly, the Advisory Committee's Notes to the 1993 Amendments to Rule 26 state that the initial disclosures serve to provide parties with certain "basic information," including the existence of insurance, which "is needed in most cases to prepare for trial *or to make an informed decision about settlement*." Fed.R.Civ.P. 26, 1993 adv. com. notes (emphasis added).

In addition, Rule 26 creates a duty for the parties to investigate and supplement initial disclosures. Specifically, pursuant to Rule 26(a)(1)(E), a "party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."

Further, Rule 26(e)(1)(A) requires a party to supplement or correct its disclosures as its investigation continues:

> [I]n a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Here, it is undisputed that, prior to serving Rule 26 (a)(1) initial disclosures, Defendants' Counsel, Richard Green made no attempt to determine from SIAC or ETS whether they had other insurance policies that might provide coverage for Plaintiffs' claims. While it may have been his general practice to determine the existence of all potentially applicable policies at a later time and to disclose them during the course of discovery, this approach does not satisfy a party's obligation under Rule 26 (a)(1) to make disclosures based on reasonably available information. Green was required to make a reasonable inquiry regarding all potential insurance coverage prior to serving initial disclosures on behalf of his clients.

Given the plain language of Rule 26 (which does not distinguish between types of insurance), its purpose as evidenced by the Advisory Committee Notes and the fact that Defendants' individual policies potentially provided coverage for the underlying claims, Defendants' failure to identify and provide their individual policies with their initial disclosures or at any time prior to settlement, violated the requirements of Rule 26(a)(1)(a)(iv), Rule 26(a)(1)(E) and Rule 26(e)(1)(A).

### Coverage Under the Undisclosed Policies

Plaintiffs seek a summary determination that the newly disclosed insurance policies would have provided coverage for the claims in the underlying action. Defendants argue that their individual insurance policies did not provide coverage because they contained joint venture exclusions that would have prevented coverage in the underlying action. The policies in question include the following provisions:

#### *Zurich Commercial Umbrella Policy*

Coverage B – Umbrella Liability Insurance

> Under Coverage B, we will pay on behalf of the insured, sums as damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of bodily injury…

> Insured means:
> A. You, if you are an organization shown in the Declarations, other than a partnership, joint venture or limited liability company…
> B. You, if you are a partnership or joint venture shown in the Declarations…

> No person or organization is an insured with respect to the conduct of any current, past or newly formed partnership, limited liability company or joint venture that is not designated with the Declarations of this policy as Named Insured…

(Doc. 118-36).

#### *Bituminous Primary Policy*

Section II – Who is an Insured

1. If you are designated in the Declarations as:
    b. A partnership or joint venture, you are insured. Your members, you partners, and their spouses are also insureds, but only with respect to the conduct of your business…

With respect to the conduct of any past or present joint venture or partnership not shown as a Named Insured in the Declarations and which you are or were a partner or member, you, and others identified in items 1.a., 1.b., and 1.c., subject to the conditions and limitations contained therein, are insureds, but only with respect to liability arising out of "you work" on behalf of any partnership or joint venture not shown as a Named Insured in the Declarations, provided no other similar liability insurance is available to you for "your work" in connection with your interest in such partnership or joint venture.

A partnership or joint venture, not shown as a Named Insured in the Declarations, of which you have 33% or more ownership interest at the time of "bodily injury" or "property damage" caused by an "occurrence" or "personal and advertising injury" caused by an offense, is an insured, provided that no other similar liability insurance is available to that partnership or joint venture.

(Doc. 118-33).

### *Liberty Mutual Primary Policy*

A. Amendment – Named Insured
1. The term "Named Insured" includes in addition to the person or organization designated in the Declarations as the "First Named Insured":
    a. See Attached Schedule [SIAC is a Named Insured]…
    b. subject to 1.a. above, any other organization (except for a partnership, joint venture or limited liability company) incorporated or organized under the laws of the United States of America…
    A partnership, joint venture or limited liability company is not a Named Insured unless it is shown in 1.a. above. No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in 1.a. above.
                                    ****
Blanket Completed Operations Coverage for Past Joint Ventures
    The following is added to Section II, "Who is an Insured:" With respect to the "the product completed operations hazard of your work" you are an insured for your bodily injury or property damage liability arising out of the conduct of any joint venture(s) of which you were a member, even though the joint venture is not shown as a Named Insured in the Declarations, This coverage will not insure to the benefit of any other party except you.

(Doc. 102-10).

9

*Clarendon National Policy*

    A.    Persons Insured
    1.b. Any organization(s) you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest will be deemed to be an insured…notwithstanding anything to the contrary contained above, this policy does not apply to any liability arising out of conduct of any current, past, or newly acquired or formed partnership or joint venture that is not state in the Declarations of this policy as an Insured.

(Doc. 102-11).

Under Illinois law, a "joint venture" is simply defined as "an association of two or more persons to carry out a single enterprise for profit." *Groark v. Thorleif Larsen & Son, Inc.,* 596 N.E.2d 78, 81 (1992). To determine the parties' intent to form a joint venture, the court must find each of the following factors: (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint ventures; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) provision for joint sharing of profit and losses." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of America,* 424 F.3d 542, 547 (7th Cir. 2005) (citing *Minyo v. Minyo,* 581 N.E.2d 170, 173 (1991)). In the absence of any of the five elements, no joint venture exists. *O'Brien v. Cacciatore,* 591 N.E.2d 1384, 1389 (1992). The burden of proving the existence of a joint venture is on the person who claims such a relationship exists. *Id.* Ordinarily, the question of whether a joint venture exists is a question for the trier of fact. *Id.* But, if there are no material issues of fact appropriate for jury determination, the issue, is subject to summary disposition.

Defendants, relying almost exclusively on the language of the Joint Venture Agreement, assert that the undisputed material facts establish as a matter of law that they formed a joint venture to complete the Project. First, Defendants point out that they bid on the Project as a joint

10

venture, were awarded the project as a joint venture and entered into a Joint Venture Agreement to establish the parameters of their respective work. Defendants maintain that they both contributed resources, skill and manpower necessary for completion of the Project.

Notwithstanding these facts and an express agreement between ETS and SIAC to carry on "an enterprise with a common interest," the evidence relating to the degree of joint proprietorship and mutual right to exercise control over the enterprise does not support the existence of a joint venture under Illinois law.

The right to control requires some right by the parties to direct and govern the conduct of each other in connection with the joint venture. *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 158 (7th Cir. 1988). When examining this element, Courts consider "whether the parties manage their own affairs separately, whether they appoint persons to management positions within the joint venture, whether they control the methods or policies used by each other, whether they exert or attempt to exert control over the work of the joint venture, and whether any right to control is one-sided rather than mutual." *Quadro Enter., Inc. v. Avery Dennison Corp.,* 2000 WL 1029176, at *7 (N.D. Ill. 2000); s*ee also*, *Barton v. Evanston Hosp.,* 513 N.E.2d 65, 67 (1987) (determining whether the parties exerted a "right to direct and govern the policy and the conduct of the other in connection with the joint venture" is paramount to a joint venture analysis); *O'Brien,* 591 N.E.2d at 1388–89; *Clapp v. JMK.Skewer, Inc.,* 484 N.E.2d 918, 920–21 (1985)

In this case, the Joint Venture Agreement specifically states that each contractor "shall be free to conduct its respective business in whatever manner it sees fit and that neither shall be entitled to make nor be bound by any representations, actions or liabilities whatsoever done by the other party." It further provides that each contractor was responsible for a set of lanes – ETS

was "solely responsible" for the westbound lanes, while SIAC was "solely responsible" for the eastbound lanes. Both contractors were "solely responsible" for the mainline pavement that each installed on the Project, including "testing, incentive payments/deductions, and any required corrective actions that maybe imposed by the Illinois Department of Transportation." Finally, each contractor "severally assume[d] all obligations and responsibilities to the Illinois Department of Transportation."

In spite of Defendants' contentions to the contrary, in the absence of any other facts in the record that would demonstrate that they conducted themselves inconsistent with the terms of the Agreement, Defendants managed their Project related affairs separately, had no control over the methods or policies used by the other in performing their portion of the Project and did not have the ability to exert control over the work of the other. As such, a joint venture did not exist between ETS and SIAC with respect to the Project and the aforementioned individual policies would have afforded coverage for the claims in the underlying action.

### Misrepresentations

The elements of a cause of action for intentional or fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.,* 402 N.E.2d 599 (1980). The elements of a cause of action for negligent misrepresentation are: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under

a duty to communicate accurate information. *Fox Associates Inc. v. Robert Half International, Inc.,* 777 N.E.2d 603 (2002). The two claims differ only in the mental state required; for fraudulent misrepresentation, the defendant must know that the statement is false, while for negligent misrepresentation, the defendant need only be negligent in ascertaining the truth of the statement. *City of Chicago v. Michigan Beach Housing Co-op.,* 696 N.E.2d 804 (1998).

Plaintiffs argue that based on the undisputed material facts, Defendants' failure to disclose all insurance policies which may have been applicable to the underlying action constitutes negligent and/or intentional misrepresentation as a matter of the law. The Court disagrees.

Although Defendants failed to comply with the disclosure requirements of Rule 26, there remain material issues of fact as to whether that failure constituted either intentional or negligent misrepresentation. Absent an admission by Defendants or direct evidence, whether in failing to disclose the individual insurance policies, Defendants intended to induce Plaintiffs to act – specifically, to settle for the $1,000,000 Bituminous policy limits -- is a disputed fact for determination by the jury which may be established by circumstantial evidence. There are also disputed questions of fact regarding whether Plaintiffs acted in reliance on the misrepresentations in the Rule 26 disclosures. Plaintiffs contend that they acted in reliance on the false information in Defendants' disclosures and settled their claims for the policy limits of the only policy disclosed. For their part, Defendants argue that there are inconsistencies in the record regarding the timing of the settlement demand and the production of the initial disclosures which create a material issue of fact. Defendants also challenge whether Plaintiffs' alleged reliance was justifiable.

At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Credibility determinations, the weighing of evidence and the drawing of legitimate inferences from facts are jury functions.

Finally, whether and to what extent Plaintiffs were damaged due to Defendants' failure to disclose the additional policies is also a question of fact for the jury's determination. Therefore, a summary determination as to this issue cannot be made by the Court.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** to the extent the Court finds, as a matter of law, that Defendants' initial disclosures in the underlying action violated Rule 26 and the undisclosed individual policies would have afforded coverage for Plaintiffs' claims in the underlying action. Plaintiffs' motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

**DATED: January 31, 2017**

        **s/ Staci M. Yandle**
        **STACI M. YANDLE**
        **United States District Judge**