IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LILIYA TURUBCHUK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-594-SMY-DGW |
| | ) |
| E.T. SIMONDS CONSTRUCTION COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is Defendants Southern Illinois Asphalt Company, Inc.'s Daubert Motion Regarding the Expert Testimony of Komron Allahyari (Doc. 272). Defendant E.T. Simonds Construction Company has joined the motion (Doc. 274). Plaintiff filed a response (Doc. 281). For the following reasons, the Motion is **DENIED**.

## BACKGROUND

In 2007, Plaintiffs filed a negligence action seeking to recover for injuries resulting from a single vehicle rollover accident on August 21, 2005 ("the underlying action") (*see Turubchuk v. E.T. Simonds Const. Co.*, 07-CV-216-WDS). Plaintiffs sued Defendants E.T. Simonds Construction Company ("ETS") and Southern Illinois Asphalt Company, Inc. ("SIAC"), alleging that Defendants were contractors on a State of Illinois road construction project responsible for repaving a stretch of Interstate 24. Plaintiffs alleged that the vehicle in which they were riding went off the paved road in the construction zone, slipped off of a severe edge drop-off, left the highway and rolled. Plaintiffs alleged that Defendants were negligent in performing the repaving.

1

At the time of the accident, ETS and SIAC carried insurance as a joint venture through an insurance policy issued by Bituminous Insurance Company.[1] In addition to the Bituminous policy, both Defendants were individually insured through several policies.

Attorney Richard Green represented ETS and SIAC in the underlying action. Plaintiffs were represented by Komron Allahyari. On May 14, 2007, Allahyari made a $1,000,000.00 policy-limits settlement demand after allegedly receiving confirmation from Green that the Bituminous policy was the only policy available to cover Plaintiffs' claims against the Defendants. On May 15, 2007, Green served Defendants' Rule 26(a)(1) initial disclosures, which only identified the Bituminous policy. Defendants never disclosed their individual policies.

Nearly six years later, Plaintiffs filed the instant action seeking damages for Defendants' failure to disclose their individual policies in the underlying action. Plaintiffs allege that if Defendants had disclosed the individual policies, Plaintiffs would not have settled for what they believed were "policy limits" of the only policy disclosed to them. In the Second Amended Complaint, Plaintiffs assert claims for intentional misrepresentation, fraudulent concealment, negligent misrepresentation, and constructive fraud.

## **DISCUSSION**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. *Daubert*

---

[1] Defendants moved for summary judgment seeking, among other things, that the Court find as a matter of law that they were operating as a joint venture at the time of the underlying accident. The Court denied summary judgment as to the joint venture issue finding that pursuant to the express terms of the Defendants' written agreement, Defendants did not have a mutual right to exercise control over each other regarding the construction project and, therefore, were not a legal joint venture.

*v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). Courts function as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). In order to be considered reliable, proposed expert testimony must be supported on "good grounds." *Daubert,* 509 U.S. at 590. Ultimately the reliability inquiry must be tied to the particular facts of the case. *Kumho Tire,* 526 U.S. at 150.

In assessing reliability, a court must ensure that the proffered expert testimony is "well-grounded in methods and procedures" of the expert's technical discipline. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Moreover, for an expert proffered based on his experience, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997)). As the Supreme Court noted: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.,* 522 U.S. at 146. Stated another way, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.,* 395 F.3d 416, 419 (7th Cir. 2005); *see also Mamah,* 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert.").

The Seventh Circuit has consistently held that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elec. Corp.,* 395 F.3d at 419-20 (collecting cases). Rather, the expert must explain *how* that experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Frazier,* 387 F.3d 1244, 1261 (2004) (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.) (emphasis added)). Finally, an expert's qualification and experience alone are not sufficient to render his opinions reliable. *Id.* The testimony must also assist the trier of fact. *Id.* at 1262.

Allahyari is a former attorney who represented the Plaintiffs in the underlying action. He has been designated by Plaintiffs as a non-retained expert to testify as to his opinions regarding the reasonable settlement value of the underlying action had Defendants disclosed their individual insurance policies at the time the case settled in 2007. Defendants assert that Allahyari's opinion testimony should be excluded because (1) he relied on the flawed opinions of Edward Stevens, the construction zone expert Allahyari utilized in the underlying action; (2) his opinion that there was liability in the underlying action is *ipse dixit* and based on unfounded circular reasoning; (3) his opinions are not based on a sufficiently reliable foundation; and (4) his opinions as to the settlement value of the underlying claim are flawed because judicial estoppel would have precluded the underlying action.

Defendants first contend that Allahyari's opinions are flawed because in reaching his conclusion, he relied in part on Edward Stevens – one of the liability experts Allahyari retained in the underlying action. Stevens opined that an abrupt pavement edge drop-off in the immediate vicinity of the crash site violated contract plans, specifications, and acceptable engineering practices and created an extra hazardous risk. Defendants maintain that Stevens' opinions that the contractors created an extra hazardous risk are faulty and based on an incorrect interpretation of the Standard Specifications for Road and Bridge Construction. Defendants maintain that because Stevens' opinions are flawed, Allahyari's reliance upon Stevens' opinions is also

4

unsound and unreliable. But "[t]he reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology – the framework—of the expert's analysis." *See Manpower, Inc. v. Insurance Co. of Pennsylvania,* 732 F.3d 796, 808 (7th Cir. 2013). Thus Defendants' disagreements with Stevens' ultimate conclusions are not a justifiable basis to exclude Allahyari's opinions. Defendants may certainly attempt to discredit Allahyari's reliance on Steven's conclusions on cross-examination or in their own presentation of the evidence.

Defendants next assert that Allahyari should be prohibited from testifying that because the Defendants settled the underlying action, there must have been liability. Defendants maintain that such an opinion amounts to pure ipse dixit. An expert asserts an *ipse dixit* opinion, if "the expert asserts a bottom line conclusion, but lacks any articulable facts to substantiate that conclusion or completely fails to explain the reasoning or methods employed to reach that conclusion." *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009). Here, Allahyari testified that he based his liability opinion on the reports of his construction zone and accident reconstruction experts as well as the fact that after sending his detailed demand to Richard Green, Defendants settled for one million dollars without conducting any discovery. As such, the Court is satisfied that this opinion satisfies *Daubert's* reliability standard and is not merely *ipse dixit*.

Defendants also assert that Allahyari does not have a sufficiently reliable foundation upon which to render an opinion as to the reasonable settlement value of the underlying action because he is not a currently licensed attorney and only tried three cases to verdict during his legal career. The Court disagrees. Allahyari practiced plaintiffs' personal injury law for fifteen

years prior to retiring. His opinion is reasonably based on his experience with personal injury claims and what he personally would have done as the attorney representing the Plaintiffs in the underlying action. The fact that Allahyari is no longer practicing law is immaterial.

Finally, Defendants contend that judicial estoppel would have precluded the underlying action. Specifically, Defendants assert that in the Washington State case, Plaintiff Ludmila Nemtsova "essentially conced[ed] that she was negligent and/or her conduct was a proximate cause of the motor vehicle accident." Defendants' argument is without merit. "Judicial estoppel is an equitable doctrine invoked by the court at its discretion the purpose of which is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *See Seymour v. Collins*, 39 N.E.3d 961, 973 (2015). The doctrine applies when litigants take a position, benefit from that position, and then seek to take a contrary position in a later proceeding. *Id*.

Here, Plaintiffs have never taken inconsistent positions regarding the underlying action. Plaintiff Ludmila Nemstova never admitted fault in the Washington State settlement and, in fact, specifically denied fault:

> Nemtsova further disputes the conclusion that she is the 100% at fault party with respect to the Incident. Specifically, Nemtsova contends that there were no white fog lines or yellow direction separator lines painted on the new asphalt. Nemtsova also contends that the Report's author apparently found no evidence of signage, warning cones, warning barriers, or other evidence that the person(s) performing the road re-paving work complied with motor vehicle and highway safety standards, regulations, and laws pertaining to required safety devices for road construction areas. Nemtsova contends that based upon this evidence, a reasonable trier-of-fact could find that other at-fault parties are liable for the injuries and damages of the Claimants.

Plaintiffs never alleged in the Washington State case or any other litigation that Defendants were not at fault in the underlying action and later switched positions. Accordingly, judicial estoppel is inapplicable.

## CONCLUSION

For the foregoing reasons, Defendants' Daubert Motion Regarding the Expert Testimony of Komron Allahyari is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  October 24, 2017**

<u>s/ Staci M. Yandle</u>
**STACI M. YANDLE**
**United States District Judge**
