IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LILIYA TURUBCHUK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-594-SMY-DGW |
| | ) |
| E.T. SIMONDS CONSTRUCTION COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is Plaintiffs' Motion to Strike the Supplemental Opinions of Defendants' Expert Witness (Doc. 275). Plaintiffs move to strike Defendants' expert G. Patrick Murphy's supplemental report and to bar Murphy from testifying at trial regarding any opinions set forth in the supplemental report. Defendants have filed responses (Docs. 279, 280). For the following reasons, the Motion is **GRANTED.**

## BACKGROUND

In 2007, Plaintiffs filed a negligence action seeking to recover for injuries resulting from a single vehicle rollover accident on August 21, 2005 ("the underlying action") (*see Turubchuk v. E.T. Simonds Const. Co.*, 07-CV-216-WDS). Plaintiffs sued Defendants E.T. Simonds Construction Company ("ETS") and Southern Illinois Asphalt Company, Inc. ("SIAC"), alleging that Defendants were contractors on a State of Illinois road construction project responsible for repaving a stretch of Interstate 24. Plaintiffs alleged that the vehicle in which they were riding went off the paved road in the construction zone, slipped off of a severe edge drop-off, left the

1

highway and rolled. Plaintiffs alleged that Defendants were negligent in performing the repaving.

At the time of the accident, ETS and SIAC carried insurance as a joint venture through an insurance policy issued by Bituminous Insurance Company.[1] In addition to the Bituminous policy, both defendants were individually insured through several policies.

Attorney Richard Green represented ETS and SIAC in the underlying action. Plaintiffs were represented by Komron Allahyari. On May 14, 2007, Allahyari made a $1,000,000.00 policy-limits settlement demand after allegedly receiving confirmation from Green that the Bituminous policy was the only policy available to cover Plaintiffs' claims against the defendants. On May 15, 2007, Green served Defendants' Rule 26(a)(1) initial disclosures, which only identified the Bituminous policy. Defendants never disclosed their individual policies.

Nearly six years later, Plaintiffs filed the instant action seeking damages for Defendants' failure to disclose their individual policies in the underlying action. Plaintiffs allege that if Defendants had disclosed the individual policies, Plaintiffs would not have settled for what they believed were "policy limits" of the only policy disclosed to them. In the Second Amended Complaint, Plaintiffs assert claims for intentional misrepresentation, fraudulent concealment, negligent misrepresentation and constructive fraud.

## **DISCUSSION**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function

---

[1] Defendants moved for summary judgment seeking, among other things, that the Court find as a matter of law that they were operating as a joint venture at the time of the underlying accident. The Court denied summary judgment as to the joint venture issue finding that pursuant to the express terms of the Defendants' written agreement, Defendants did not have a mutual right to exercise control over each other regarding the construction project and, therefore, were not a legal joint venture.

2

as gatekeepers and determine whether expert testimony should be presented to the jury. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). Courts function as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). In order to be considered reliable, proposed expert testimony must be supported on "good grounds." *Daubert,* 509 U.S. at 590. Ultimately the reliability inquiry must be tied to the particular facts of the case. *Kumho Tire,* 526 U.S. at 150.

In assessing reliability, a court must ensure that the proffered expert testimony is "well-grounded in methods and procedures" of the expert's technical discipline. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Moreover, for an expert proffered based on his experience, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997)). As the Supreme Court noted: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.,* 522 U.S. at 146. Stated another way, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.,* 395 F.3d 416, 419 (7th Cir. 2005); *see also Mamah,* 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert.").

The Seventh Circuit has consistently held that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elec. Corp.,* 395 F.3d at

419-20 (collecting cases). Rather, the expert must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Frazier,* 387 F.3d 1244, 1261 (2004) (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.) (emphasis added)). Finally, an expert's qualification and experience alone are not sufficient to render his opinions reliable. *Id.* The testimony must also assist the trier of fact. *Id.* at 1262.

Plaintiffs assert that Murphy's Supplemental Report should be stricken because he has not established the requisite methodology or factual basis for his opinions, his opinions are legal conclusions and speculative in nature, and the opinions rely in large part on evidence already deemed inadmissible by this Court in its rulings on Plaintiffs' motions *in limine*. Murphy is an attorney in private practice and a former Federal District Judge. In his Supplemental Report, Murphy sets forth opinions regarding the settlement value of the underlying action based upon the information that was then reasonably available at the time the action settled in 2007. First, Murphy opines that there was no liability on the part of the "joint venture" because the construction zone signing and markings were done properly. He further opines that Plaintiff Ludmila Nemtsova was the sole proximate cause of the underlying accident. Regarding the settlement, Murphy opines that Bituminous "made a business decision to settle the case because everyone on the defense side thought there was inadequate insurance (because of the joint venture) to cover the potential loss – and they did not know of the Washington state litigation." Murphy also offers his opinion that "if the participants in the putative joint venture were backed by their own individual insurers with ample coverage, the case would certainly not have settled for anything beyond the cost to defend the case."

While an expert's reliance on experience alone does not necessarily render his opinions unreliable, here, Murphy does not explain the methodology or principles that support his conclusions in either the Supplemental Report or his deposition. Instead, he merely asserts bottom line conclusions that the underlying case would not have settled for anything beyond the cost to defend the case (which he estimates to be approximately $300,000), and that the individual insurers would have ignored the time limit demand. Murphy indicates that his opinion as to the settlement value of the underlying case is based on his experience, but he does not explain how he calculated the settlement value or identify any of the factors he relied upon in arriving at his estimated value. Attorneys customarily and routinely valuate claims and cases for settlement based on a myriad of factors – Murphy identified none. As such, the Court cannot conclude that his opinion is reliable. He also fails to provide a factual basis or to articulate how he reached the conclusion that the insurance companies would have ignored the demand.

Additionally, Murphy's experience-based testimony does not satisfy *Daubert*'s reliability standard because he has not tied any specific aspects of his experience to his conclusions. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.R.Evid. 702 advisory committee's notes. In other words, an expert witness cannot merely present his qualifications alongside his opinion; he must explain why the application of his prior experience to the facts at hand compel his final conclusions. *Minix v. Canarecci,* 597 F.3d 824, 835 (7th Cir. 2010). Such an explanation is required by *Daubert,* which requires the trial judge to conduct a preliminary assessment of the validity of an expert's reasoning or methodology and his or her application of that reasoning or methodology to the facts at issue. *Daubert,* 509 U.S. at 592–93. However, no

such assessment can be conducted when as is the case here, the expert proffers opinion but no analysis.

Finally, many of Murphy's opinions and statements in the Supplemental Report are nothing more than inadmissible legal conclusions. Murphy opines that there was no liability on the part of the "joint venture" because the signing and markings were done properly. He also opines that Plaintiff Ludmila Nemtsova was the sole proximate cause of the underlying accident. Regarding the settlement in the Washington State case, Murphy states, "this is the cleanest and most forceful admission a litigant can make – it is a judicial admission" and "[t]his judgment also has res judicata effect and everyone in the Caravan, including Ludmila, is estopped from contesting that she caused the accident (they claimed she did so and she admitted it)." This is clearly a legal conclusion – not a proper expert opinion. Similarly, his opinion that "neither of the parties to the joint venture breached any legal duty to the driver and passengers of the Dodge Caravan" is a legal conclusion.

It is axiomatic that expert witnesses may not evade the province of the court by offering legal conclusions or testifying to the applicability or interpretation of a particular statute or regulation. *See Bammerlin v. Navistar Intern. Transp. Corp.,* 30 F.3d 898, 901 (7th Cir. 1994). Nor may an expert witness offer an opinion or legal conclusion on issues that are outcome determinative. *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Strike the Supplemental Opinions of Defendants' Expert Witness is **GRANTED**.

**IT IS SO ORDERED.**

**DATED: October 24, 2017**

                                                **s/ Staci M. Yandle**
                                                **STACI M. YANDLE**
                                                **United States District Judge**