**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **LILIYA TURUBCHUK, et al.,** )<br>)<br>**Plaintiffs,** )<br>)<br>vs. )<br>)<br>**E.T. SIMONDS CONSTRUCTION** )<br>**COMPANY, et al.,** )<br>)<br>**Defendants.** ) | Case No. 12-CV-594-SMY-DGW |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

G. Patrick Murphy was disclosed as a retained expert witness by Defendants Southern Illinois Asphalt Company, Inc. ("SIAC") and E.T. Simonds Construction Company ("ETS") on December 1, 2014 (Docs. 94 and 95). Defendants supplemented Murphy's original disclosure with a Supplemental Report on the issue of damages on July 21, 2017 (Doc. 260).

On October 24, 2017, this Court entered an Order granting Plaintiffs' motion to strike Murphy's supplemental opinions, finding that the opinions constituted inadmissible legal conclusions and lacked an adequate factual basis. The Court also noted that Murphy's report lacked a description of methodology as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (Doc. 299). The Order detailed the applicable *Daubert* standards and the deficiencies in Murphy's opinions. *Id*. The Court subsequently denied Defendants' motion to reconsider its Order, but granted Defendants a third bite at the apple – one final opportunity to address the deficiencies and to disclose proper expert opinions (Doc. 310).

Plaintiffs now move to strike Murphy's Second Supplemental Report and to bar Murphy from testifying as to the opinions set forth in the report (Doc. 325). Defendants have filed Responses (Docs. 334 and 334). For the following reasons, the motion is **GRANTED.**

## DISCUSSION

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. An expert's qualification and experience alone will not suffice to render his opinions reliable. *U.S. v. Frazier,* 387 F.3d 1244, 1261 (2004). Rather, the expert must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Frazier,* 387 F.3d 1244, 1261 (2004) (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends.) (emphasis added)). "It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner,* 522 U.S. 136, 146 (1997)). An expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.,* 395 F.3d 416,419 (7th Cir. 2005); *see also Mamah,* 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert.").

Notwithstanding the Court's previous Orders, Murphy's Second Supplemental Report is essentially identical in substance to the report previously stricken by this Court and, like its predecessor, is replete with irrelevant opinions, inadmissible legal conclusions, and rank speculation. Specifically, Murphy once again opines:

> Based upon information that was reasonably available at the time of settlement in 2007, there was no liability on the part of what was believed to be at the time a

> valid joint venture. The signing and the markings in the construction zone were done properly. Ludmila Nemtsova was the sole proximate cause of this accident. For an unknown reason she drove off the two 12-foot travel lanes and the left shoulder where she lost control of the Caravan.
>
> Bituminous made a business decision to settle the case because everyone on the defense side thought there was inadequate insurance (because of the joint venture) to cover the potential loss and they did not know of the Washington state litigation. If the participants in the joint venture were backed by their own individual insurers with ample coverage, the case would certainly not have settled for anything beyond the cost to defend the case. In short, the defense did not think it had enough backing to call the plaintiffs' bluff and folded.

Murphy's supplemental deposition testimony is consistent with his report and cannot save his opinions from *Daubert's* wrath.

Murphy's opinion that Plaintiff Ludmila Nemtsova was the sole proximate cause of the underlying accident is both irrelevant and an inadmissible legal conclusion. As is his opinion that there was no liability on the part of the purported joint venture because the signing and markings were done properly. The Court has previously and persistently ruled that whether or not Defendants would have been ultimately liable for the accident that was the subject of the underlying litigation is irrelevant and immaterial to the claims and defenses in this case. This is not a legal malpractice action and Plaintiffs are not required to prove the underlying negligence claim in order to succeed on their fraud and misrepresentation claims. Likewise, whether and to what extent Defendants were negligent and therefore ultimately liable for the underlying accident provides no basis for a liability defense in this case. Murphy's opinions are admissible, if at all, on the issue of damages only.

Consistent with his report, Murphy testified in his supplemental deposition that his opinions are based in part on the deposition testimony of William Zdankiewicz, the IDOT senior resident engineer for the underlying construction project. Murphy also based his opinions on his review of Zdankiewic's daily traffic control inspection reports, state police photographs, and a

state police traffic report (Doc. 325-2, p. 32). Murphy's reliance on Zdankiewicz's report and deposition testimony – given nine years after the settlement in the underlying action – is improper. As this Court has reiterated, the applicable measure of damages for Plaintiffs' fraud and misrepresentation claims is the reasonable settlement value of their claims in the absence of fraud and at the time the parties reached an agreement to settle in 2007, based on **all known or foreseeable facts and circumstances affecting the value of the claims when they settled.**

Murphy testified that he has never inquired of Richard Green, defense counsel in the underlying action, as to what factors Green considered or would have considered in determining a settlement value. Relatedly, Green himself never discussed the accident with Zdankiewicz nor did he retain a traffic engineer, signage expert or any other expert to analyze whether the signage or drop-off was appropriate prior to accepting the demand. There is simply no indication or evidence that the information detailed in Zdankiewicz's report and testimony was considered in settling the case in 2007 or would have been considered by Green or Bituminous. Murphy merely speculates that the evidence would have been developed later had the case continued. However, 20/20 hindsight as to settlement value based on subsequently developed information and analyses is not probative on the issue of damages.

Moreover, even if Defendants' liability for the underlying accident was relevant, Murphy would not be qualified to independently offer the opinion that the road was properly marked, as he lacks the requisite training, education and experience to do so. For these reasons, Murphy's opinions related to Defendants' liability for the underlying accident are inadmissible.

Murphy's opinions as to what the insurance companies did or would have done are also speculative and lack proper foundation. Once again, Murphy provides no basis for these opinions in his report or deposition testimony. While he asserts that the individual insurers

would have ignored the time limit demand or settled for the cost of defense, he fails to explain how he reached this conclusion. Murphy has no knowledge regarding what the various insurers or Green would have done had all policies of insurance been disclosed because he did not speak with any of them, nor is there any other evidence in the record to support his assertion. Indeed, Murphy testified that he doesn't care what Green or the insurers thought about the case:

> Q: Is there a reason that you haven't spoken with Mr. Green as to what we would have done had various information been made known to him back in 2007?
> A: I was asked for my opinion to evaluate the case. And just to be straight with you, I don't really care what Mr. Green thought about the case. This is my evaluation. I can explain what happened. I can explain why the money was paid. I can see all that, but I don't know. I don't need to talk to him to evaluate the case.
>
> Q: I agree. I withdraw that question. Would you have a similar answer as to why you did not contact any of the various insurers as to what they would have done similar to your answer as to why you didn't contact Mr. Green?
> A: Well, there was only one insurer involved here in the resolution of this case and that was Bituminous, and Bituminous' evaluation of this case is not mine. I really don't care what Bituminous thought about it. This is my evaluation of the case.

(Doc. 325-2, pp. 45-46).

But an expert's evaluation based on subjective belief and unsupported speculation does not satisfy the dictates of *Daubert* – the expert must substantiate his opinions. *See Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) citing *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997); *see also, United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (rejecting expert testimony where expert "in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so.'"). As an expert, Murphy cannot create his own factual record to support his opinions.

By proffering Murphy's supplemental opinions, Defendants have yet again stubbornly disregarded this Court's clear rulings and Orders. In fact, in its Response, ETS acknowledges that, notwithstanding the final opportunity to secure and disclose relevant and admissible expert

opinions, Defendants have instead opted to preserve the record on issues and evidence previously deemed irrelevant and inadmissible by this Court. As a result, they will now defend Plaintiffs' claimed damages at trial without the benefit of expert testimony. Plaintiffs' Second Motion to Strike Defendants' Retained Expert G. Patrick Murphy is **GRANTED in its entirety**.

**IT IS SO ORDERED.**

**DATED: March 8, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**