**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LILIYA TURUBCHUK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-594-SMY-SCW |
| | ) |
| E.T. SIMONDS CONSTRUCTION COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for consideration of Defendant Southern Illinois Asphalt Company's ("SIAC") Combined Rule 50(b), 50(c), 59(a) and 59(e) Motions and Supporting Memorandum (Doc. 414). Plaintiffs Liliya Turubchuk, individually and as personal representative of the Estate of Aleksey Turubchuk, Ludmila Nemtsova, Irina Turubchuk, Elina Nemtsova, and Vladislav Nemtsov brought this action asserting intentional misrepresentation, fraudulent concealment, negligent misrepresentation and constructive fraud claims against Defendants SIAC and E.T. Simonds Construction Company (ETS).[1] Following a three-day trial, a jury returned a verdict finding SIAC liable for negligent misrepresentation.

In the Motions presently before the Court, SIAC claims that it is entitled to judgment as a matter of law or, in the alternative, a new trial because Plaintiffs failed to establish the elements of their negligent misrepresentation claim, failed to establish proximate causation, and that the

---

[1] Plaintiffs settled with ETS (Doc. 402) and dismissed their claims with prejudice prior to trial (Doc. 405, at p. 2).

Court made numerous errors in its pre-trial rulings. For the following reasons, the Motions are **DENIED**.

## LEGAL STANDARDS

Judgment as a matter of law may be entered where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." Fed. R. Civ. P. 50. In determining whether the evidence presented at trial is sufficient to withstand such a motion, the district court may not weigh the parties' evidence, pass on the credibility of witnesses, or substitute its judgment of the facts for that of the jury. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 515 (7th Cir. 1993). "A trial court should overturn a verdict only where the evidence supports but one conclusion—the conclusion not drawn by the jury." *Ryl–Kuchar v. Care Centers, Inc.*, 565 F.3d 1027, 1030 (7th Cir. 2009). In other words, a jury verdict can be set aside "[o]nly when there is a complete absence of probative facts to support the conclusion reached[.]" *Harbin v. Burlington Northern R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990). When deciding such a motion, the Court "views the evidence and all reasonable inferences in a light most favorable to the party who prevailed under the verdict." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

SIAC also moves for a new trial pursuant to Rule 59(a). A Rule 59(a) motion will only be granted if "the verdict is against the weight of the evidence ... the damages are excessive, or ... for other reasons, the trial was not fair to the party moving." *Kapelanski v. Johnson,* 390 F.3d 525, 530 (7th Cir. 2004). "Movants bear a particularly heavy burden because a court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Lewis v. City of Chicago,* 590 F.3d 427, 444 (7th Cir. 2009). The

Court must also view the evidence in the light most favorable to the non-moving party when considering a Rule 59(a) motion. *See, e.g., Wipf v. Kowalski,* 519 F.3d 380, 384 (7th Cir. 2008).

Lastly, SIAC moves for the Court to alter or amend the judgment pursuant to Rule 59(e). A Rule 59(e) motion is not an opportunity to simply rehash old arguments or to present new arguments or evidence "that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996) (citing *LB Credit Corp. v. Resolution Trust Corp.,* 49 F .3d 1263, 1267 (7th Cir. 1995)). Rather, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" in order to be successful. *LB Credit Corp.,* 49 F.3d at 1267. The decision of whether to grant or deny a motion brought under Rule 59(e) "is entrusted to the sound judgment of the district court..." *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996).

## **FACTUAL AND PROCEDURAL BACKGROUND**

The pertinent evidence presented at trial is summarized as follows: Plaintiffs were involved in an automobile accident on August 21, 2005.[2] The accident occurred in the east bound lanes of Interstate 24, which were under construction at the time. The roadway had been repaved by ETS and SIAC pursuant to a contract with the State of Illinois (the "Project").

On March 29, 2007, Plaintiffs filed a lawsuit in the United States District Court for the Southern District of Illinois against ETS and SIAC, individually, seeking to recover money damages as a result of the accident ("the underlying action") (*Turubchuk v. E.T. Simonds Const. Co.*, 07-CV-216-WDS). Attorney Komron Allahyari represented Plaintiffs in the underlying action. Richard Green was retained by the Bituminous Insurance Company to defend ETS and SIAC, and filed his Appearance in the case on April 25, 2007 on behalf of a purported joint

---

[2] Unless indicated otherwise, these facts are taken from those stipulated by the parties and incorporated into the Final Pretrial Order (Doc. 370) and the Stipulation of the Parties (Doc. 376).

venture. At the time of the accident, the purported joint venture between ETS and SIAC had insurance through a Bituminous Casualty Company policy with policy limits of one million dollars ($1,000,000.00). ETS and SIAC also had individual insurance policies with policy limits totaling $54 million dollars.

A telephone conference between Allahyari and Green occurred on May 14, 2007; Allahyari and Green dispute who initiated the telephone call. During trial, Allahyari testified that he called Green in order to verify information he received from the Illinois Department of Transportation following a Freedom of Information Act ("FOIA") request (Trial Transcript Day 2, Doc. 395 at p. 58). Allahyari's law firm had begun preparing a demand letter and needed to know whether the $1,000,000 Bituminous policy identified in the FOIA was the only available insurance or whether Defendants had any other insurance policies. *Id*. at pp. 58-59. Green testified that he received a settlement demand letter from Allahyari and, in response, immediately called Allahyari (Trial Exhibit 40 Green Deposition, Doc. 420 at p. 53).

During the call, Green told Allahyari that the one million dollar insurance policy was the only policy (Trial Transcript Day 2, Doc. 395 at p. 59). Allahyari then requested written verification of the insurance coverage so that he could show his clients. *Id*. According to Allahyari, Green stated, "I'll do you one better than that. I'll give you immediately the initial disclosures." *Id.* Allahyari testified that he remembered Green's words clearly because:

> "[I]t occurred to me, I wondered, are they due? That was my first thought. And either during the call or after we hung up I realized, no, it's not even close. But that's why it sticks in my mind. And so he promised to give me those initial disclosures and, and of course he did, the very next morning."

*Id*. at pp. 59-60.

Based on Green's representations, Allahyari sent the demand letter on May 14, 2007. *Id*. at pp. 61-62, p. 82. Allahyari testified that he regularly relied on information provided in initial

disclosures in the course of his practice. *Id*. at p. 51. He further testified that he would have immediately withdrawn the demand letter had he known about the additional policies of insurance. *Id*. at p. 62. Allahyari believes that the early disclosure was done in an effort to induce his clients to settle. *Id*. at p. 64.

Allahyari's demand letter identified damages totaling $8,169,512.84. *Id*. at p. 81. He testified that he only demanded the $1,000,000 dollar policy limit based on Green's representations. *Id*. Allahyari opined that had all potentially applicable policies of insurance been disclosed, the reasonable settlement value of the underlying action would have been $8,169,512. *Id*. at p. 84. Plaintiffs settled the underlying action for the $1,000,000 Bituminous policy limits.

Green testified that he did not have any documents that would have identified other policies in place for SIAC when he made the initial disclosures (Trial Exhibit 40 Green Deposition, Doc. 420 at p. 26). He agreed that an attorney making initial disclosures has an obligation to make a reasonable inquiry regarding insurance coverage. *Id*. at pp. 29-30. Although quite a bit of time passed between the acceptance of the demand and consummation of the settlement, Green never inquired as to whether either SIAC had any additional insurance policies. *Id*. at pp. 62-63.

Certain stipulated facts were provided to the jury, including: although ETS and SIAC entered into a joint venture agreement for the construction project, the Court had ruled that the parties did not form a joint venture under Illinois law, and thus, a joint venture did not exist at the time of the settlement of the underlying action; and that the Court had ruled that the Initial Disclosures served by Green violated Rule 26 of the Federal Rules of Civil Procedure because it did not disclose the separate policies of insurance issued to ETS and SIAC.

The jury found in favor of Plaintiffs on their negligent misrepresentation claim and awarded compensatory damages of $8,169,512.84.

## **DISCUSSION**

In its Post-Trial Motion, SIAC asserts ten separate grounds for judgment as a matter of law; eight of which were not advanced in SIAC's Rule 50(a) motions at trial.[3] SIAC does not delineate in its briefing under which particular Rule of Civil Procedure it is asserting each ground. Instead, it (somewhat randomly) identifies the following as errors it believes the Court committed in its rulings on motions *in limine* and other pre-trial rulings, including the Court's summary judgment rulings issued in January 2016:

1. The Court erred in finding as a matter of law that SIAC made a false statement of material fact;

2. Rule 26 violations do not give rise to private causes of action for damages and the Court therefore erred in allowing Plaintiffs' claims to proceed;

3. The Court erred in ruling as a matter of law that the alleged Rule 26 violation was careless or negligent;

4. Plaintiffs failed to show that the alleged Rule 26 violation was made with an intent to induce Plaintiffs to act;

5. The Court erred in ruling as a matter of law that Green was SIAC's agent;

6. The Court erred in finding as a matter of law that Plaintiffs reasonably and justifiably relied on the Rule 26 disclosure;

7. Plaintiffs failed to establish reasonable reliance;

8. Plaintiffs failed to establish proximate cause;

---

[3] At the close of the evidence, SIAC filed two written motions for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50(a) (Docs. 392 and 393). The first Motion asserted that Plaintiffs failed to establish a requisite element of their negligent misrepresentation claim because there was no evidence that Green made a false statement with the intent to induce Plaintiffs to settle the underlying lawsuit (Doc. 392). The second Motion asserted that Plaintiffs were unable to establish the requisite proximate causation and damages for their claims because there was no evidence that the individual liability insurance policies afforded coverage for the underlying action (Doc. 393). Both Motions were denied (Trial Transcript Day 3, Doc. 406 at p. 6).

9. The Court erred in several of its rulings relating to damages by excluding evidence of the underlying accident, permitting Plaintiffs' expert to testify, and prohibiting SIAC's expert from testifying; and

10. The Judgment should be amended to account for a setoff.

Only those grounds enumerated as 4 and 8 were advanced in SIAC's pre-verdict Rule 50(a) motion and, therefore, are the only grounds now appropriately before the Court under Rule 50(b) *See* Fed.R.Civ.P. 50(b), comm. note (2006 amend.)("Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it can be granted only on grounds advanced in the pre-verdict motion."); *see also Unitherm Food Sys., Inc. v. Swift–Eckrich, Inc.,* 546 U.S. 394, 404–05 (2006) (party forfeited argument not presented in a Rule 50(a) motion and not renewed in a Rule 50(b) motion).

### *Rule 50(b) Renewed Motions*

SIAC contends the Court erred by allowing Plaintiffs to proceed to judgment on their negligent misrepresentation claim when they failed to establish that the alleged misrepresentation in the Rule 26 disclosure was made with the intent to induce Plaintiffs to settle the underlying case. SIAC also contends that there was no competent evidence that Green had knowledge of any other insurance policies when he served the Initial Disclosures.

To prevail on a negligent misrepresentation claim under Illinois law, a plaintiff must establish: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information. *Fox Associates Inc. v. Robert Half International, Inc.,* 777 N.E.2d 603 (2002). The defendant need only be negligent in ascertaining the truth of the

statement. *City of Chicago v. Michigan Beach Housing Co-op.,* 696 N.E.2d 804 (1998); *see also Doe v. Dilling*, 861 N.E.2d 1052, 1075 (Ill. App. 1st Dist. 2006) ("the defendant need not know that the statement is false.

Here, Plaintiffs presented sufficient evidence for a reasonable jury to conclude that Green's misrepresentation was communicated with the intent to induce Plaintiffs to act. Allahyari testified that he called Green to confirm whether there were any additional insurance policies, that Green told him that there were no insurance policies other than the $1,000,000 Bituminous policy, and that he would immediately confirm this information in writing by sending Defendants' initial disclosures. Allahyari then sent the demand letter for the policy limits based on the representations made by Green.

Allahyari also testified that he relied on Green's representations and that he would have withdrawn the demand if it had been disclosed at any point during the pendency of the litigation that there were additional insurance policies. Green admitted that at no point during the pendency of the underlying action did he inquire as to whether SIAC had any other insurance policies.

This Court will not set aside the jury verdict if, viewing the evidence in the light most favorable to the prevailing party, there exists within the record any reasonable basis to support the verdict, leaving issues of credibility and weight of evidence to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004) (citation omitted). Because there was sufficient evidence to support the jury's finding, SIAC's motion is denied as to this point.

Next, SIAC maintains that Plaintiffs failed to establish proximate causation. Proximate cause is defined "as that cause which, in natural or probably sequence, produces the complained of injury." *Bogovich v. Nalco Chemical Co.*, 572 N.E.2d 1043, 1044 (Ill. App. 1st Dist. 1991).

Plaintiffs established proximate cause with Allahyari's testimony that he evaluated the settlement value of the underlying action to be more than $8,000,000 and that Plaintiffs would not have settled their case for $1,000,000 had they been aware of the other policies of insurance. This testimony was sufficient to support this element, and SIAC's motion is also denied as to this point.

### *Rule 59(a) Motion*

To obtain a new trial, SIAC must establish not only that the Court's ruling was unreasonable, but that the error in admitting or excluding the evidence in question affected its substantial rights. *United States v. Whiteagle*, 759 F.3d 734, 756 (7th Cir. 2014). However, the majority of SIAC's remaining arguments are effectively an untimely and unsupported motion for reconsideration and do not establish any error warranting a new trial.

Relative to grounds 1, 2, 3, 5, 6, 7, and 9, SIAC argues this Court made numerous errors in ruling on the parties' summary judgment motions, *Daubert* motions, and motions *in limine*. It reiterates (at times verbatim) arguments previously made and rejected during the pre-trial stage of this litigation. Although SIAC's arguments do not meet the standard for reconsideration of the Court's prior rulings (*see Broaddus v. Shields,* 665 F.3d 846, 860 (7th Cir. 2011)), for the sake of completeness, the Court will briefly address the remaining grounds.

### *Joint Venture*

SIAC contends that the Court erroneously found, *sua sponte* and as a matter of law, that SIAC and ETS did not form a joint venture with respect to the underlying construction project. SIAC maintains that this erroneous finding is dispositive of much – if not all – of this case. This issue has been repeatedly litigated, with SIAC raising the same arguments at every turn (*see* Docs. 199, 200, 201, 223, 224, 238, 240, and 350).

The Court's determination that a joint venture did not exist was neither improper nor *sua sponte*. The joint venture issue was raised either directly or indirectly in each of the parties' summary judgment briefings. ETS specifically moved for the Court to find as a matter of law that Defendants were acting as a joint venture. More importantly, the existence or absence of a joint venture relationship was not determinative of Defendants' disclosure obligations under Rule 26. Even if a joint venture relationship legally existed between the defendants, it would not have relieved them of their individual duties to third parties, including Plaintiffs.

A significant feature of a joint venture is the individual liability of the members for the acts done in the scope of the venture. "Every member of a joint venture is liable to third persons for acts of his fellow ventures done in the course of the enterprise." *Tassan v. United Development Co.,* 410 N.E.2d 902, 908 (1980) (holding that if the plaintiff could show a joint venture between a developer and contractor, the contractor would be jointly liable for the developer's breach). Thus, the joint venture issue was wholly irrelevant to SIAC's duty to disclose its individual insurance policies under Rule 26.

SIAC also argues that the evidence overwhelmingly supported the existence of a joint venture[4] as a matter of law. The Court disagrees. The evidence relating to the degree of joint proprietorship and mutual right to exercise control over the Project did not support the existence of a joint venture under Illinois law (*see* Docs. 199, 200, 201). The undisputed evidence established that the SIAC and ETS managed their Project-related affairs separately, had no control over the methods or policies used by the other in performing their portion of the Project,

---

[4] Under Illinois law, a "joint venture" is simply defined as "an association of two or more persons to carry out a single enterprise for profit." *Groark v. Thorleif Larsen & Son, Inc.,* 596 N.E.2d 78, 81 (1992). To determine the parties' intent to form a joint venture, the court must find each of the following factors: (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint ventures; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) provision for joint sharing of profit and losses. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of America,* 424 F.3d 542, 547 (7th Cir. 2005) (citing *Minyo v. Minyo,* 581 N.E.2d 170, 173 (1991)).

and did not have the ability to exert control over the work of the other. Specifically, each contractor was responsible for a set of lanes – ETS was "solely responsible" for the westbound lanes, while SIAC was "solely responsible" for the eastbound lanes. Both contractors were "solely responsible" for the mainline pavement that each installed on the Project, including "testing, incentive payments/deductions, and any required corrective actions that maybe imposed by the Illinois Department of Transportation." Finally, each contractor "severally assume[d] all obligations and responsibilities to the Illinois Department of Transportation." In the absence of any of the requisite elements, no joint venture exists. *O'Brien v. Cacciatore,* 591 N.E.2d 1384, 1389 (1992). The burden of proving the existence of a joint venture is on the person who claims such a relationship exists. *Id.* In this case, SIAC did not meet its burden and the Court did not err in ruling that as a matter of law, a joint venture did not exist between ETS and SIAC with respect to the Project.

### *No Private Cause of Action Based on Rule 26 Violations*

SIAC asserts that the Court's treatment of the alleged Rule 26 violation effectively created a new private cause of action. Specifically, SIAC argues that even if Rule 26 was violated, it does not follow that Plaintiffs may sue for negligent misrepresentation based on such a violation. Plaintiffs proceeded on a negligent misrepresentation claim; not claim for a violation of Rule 26. In other words, unlike the cases cited by SIAC, Plaintiffs did not merely assert that Defendants violated Rule 26 and thus were liable. Plaintiffs still had to prove the elements of negligent misrepresentation. Courts have recognized a cause of action alleging misrepresentation for the concealment of evidence in underlying actions. *See*, e.g., *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3rd Cir. 2014); *Matsuura v. E.I. Dupont de Nemours & Co.*, 73 P.3d 687 (Haw. 2003). Accordingly, this point is denied.

### *Rule 26 Violation was Careless or Negligent*

SIAC contends that factual questions concerning whether Rule 26 was actually violated prohibited the Court's ruling that Green was careless or negligent in preparing the Rule 26 disclosures. Rule 26(a)(1)(A)(iv) provides in relevant part:

> (iv) …[A]ny insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment. *See* Fed.R.Civ.P. 26(a)(1)(A)(iv).

This provision is clear and unambiguous that **"*any* insurance agreement"** that *might* cover all or a part of a judgment entered in the case is required to be initially disclosed and produced Fed.R.Civ.P. 26(a)(1)(A)(iv) (emphasis added). There is simply no support in the record for SIAC's contention that factual questions remained as to whether Green was careless or negligent.

Green testified that prior to serving the Rule 26 disclosures, he made no attempt to determine from SIAC or ETS whether they had other insurance policies that might provide coverage for Plaintiffs' claims. The Rules clearly required Green to make a reasonable inquiry regarding all potential insurance coverage prior to serving initial disclosures on behalf of his clients. It is undisputed that he did not.

Further, at some point following his retention, Green became aware that SIAC had notified Liberty Mutual of the underlying action, yet he did not update the Rule 26 disclosures. Given the plain language of Rule 26 (which does not distinguish between types of insurance) and its purpose as evidenced by the Advisory Committee Notes, Green's failure to identify and provide Defendants' individual policies with their initial disclosures or at any time prior to settlement, violated the requirements of Rule 26.

### *Green as Agent*

Next, SIAC asserts that the Court erred in ruling that Green was SIAC's agent. SIAC also asserts that it was not liable for the allegedly negligent misconduct of Green, absent evidence to support knowledge or ratification. Based on the attorney-client relationship, clients are generally bound by their attorney's acts or omissions that fall within the apparent scope of the attorney's authority. *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 277 (2004); *see also Link v. Wabash Railroad Company*, 370 U.S. 626 (1962); *Smego v. Payne*, 854 F.3d 387 (7th Cir. 2017); *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009). In *Horwitz*, the Supreme Court noted that its holding did not impact the ability of an attorney to bind his or her client in a traditional, representational context. *Horwitz*, 816 N.E.2d at 284. Here, SIAC was bound as a matter of law by Green's failure to follow the Rules of Civil Procedure.

### *Plaintiffs' Reliance on Rule 26 Disclosures*

SIAC asserts that the Court erred in ruling that Plaintiffs reasonably relied on the truth of the Rule 26 disclosures and by instructing the jury that Plaintiffs' reliance was justified. SIAC argues – without support – that Allahyari should have performed additional investigation after receiving SIAC's initial disclosures. SIAC goes on to argue that because Allahyari failed to conduct additional research and relied on the disclosures, the issue of reliance should have been decided in SIAC's favor as a matter of law.

A litigant is entitled to accept answers to discovery as true, and to refrain from seeking additional discovery directed to the same issue. *See, e.g., Averbach v. Rival Mfg. Co*., 879 F.2d 1196, 1201 (3rd Cir. 1989) (Because the Federal Rules of Civil Procedure are structured to elicit truthful answers given under oath, the opposing party, in circumstances such as presented here,

may reasonably rely on interrogatory answers). Consistent with this principle, the Court found as a matter of law that Plaintiffs were entitled to rely on the truthfulness and accuracy of SIAC's Initial Disclosures. This ruling was well-reasoned and grounded in the Federal Rules of Civil Procedure.

### *Release in the Underlying Action*

Citing *Adler v. William Blair & Co.,* 648 N.E.2d 226, 232 (1995), SIAC asserts that Plaintiffs were unable to prove reasonable reliance because they executed a release applicable to SIAC as part of their settlement of the underlying lawsuit. But as discussed in the Courts' summary judgment orders (Docs. 199, 200, and 201), the holding in *Adler* does not to the instant action. Plaintiffs were entitled to rely on the truthfulness and accuracy of SIAC's legally required Initial Disclosures, and the non-reliance language in the Release cannot be a defense to Plaintiffs' claims for negligent misrepresentation. As such, SIAC's motion is denied on this point.

### *Damages*

SIAC challenges the Court's evidentiary rulings pertaining to the measure of damages, the inclusion of testimony from Plaintiffs' expert witness and the exclusion of its expert witness, G. Patrick Murphy. The applicable measure of damages for Plaintiffs' misrepresentation claim was the reasonable settlement value of their claims at the time the parties reached an agreement to settle in 2007, in the absence of misrepresentation and, based on all known or foreseeable facts and circumstances affecting the value of the claims at that time. *See, e.g., Exotics Hawaii-Kona, Inc. v. E.I. Du Pont de Nemours & Co*., 172 P.3d 1021, 1042 (Haw. 2007).

First, SIAC asserts that the Court erred in prohibiting SIAC from introducing evidence on the critical issue of its liability in the underlying accident. Specifically, SIAC maintains that the

police reconstruction report supported its contention that SIAC was not liable for the underlying auto accident. However, the Court specifically ruled that the parties could present evidence regarding the underlying accident *so long as that evidence was utilized for purposes of evaluating the underlying settlement* (*see* Docs. 238, 240, 312, 350). Despite being given multiple opportunities to do so, (*see* Doc. 310), SIAC simply failed and refused to present admissible evidence relevant to the appropriate measure of damages. Thus, this point is denied.

Next, SIAC contends that the Court erred in permitting Allahyari to testify as a non-retained expert witness and erred in striking SIAC's expert. It has long been established that an expert's opinion may be based on specialized experience, rather than scientific data, if the expert explains the methodologies and principles that support his opinion; he cannot simply assert a bottom line. *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)("Given [the expert's] failure to explain his methodology, the district court could conclude that the report offered nothing of value to the judicial process."); *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (rejecting expert testimony where expert "in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so.'"). Here, Allahyari was qualified to render opinions regarding the settlement value in the underlying case. He also explained his methodology and the bases for his opinions. SIAC's expert did not and refused to do so. Murphy's reports were replete with irrelevant opinions, inadmissible legal conclusions, and rank speculation. This point is also denied.

### *Rule 59(e) Motion*

SIAC contends that, under the one satisfaction rule, the following setoffs should be applied against the jury verdict: (1) $1,200,000.00 (the settlement value of Plaintiffs' claims against ETS); (2) $1,000,000.00 (the gross settlement value Plaintiffs received from their

settlement of the 2007 action with the Bituminous Policy); and (3) $1,530,000.00 (the compensation received by Plaintiffs as a result of the Allstate Washington State litigation. SIAC maintains that judgment in this action should therefore be reduced to $4,439,512.84.

A motion under Rule 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict. *See Zivitz v. Greenberg,* 279 F.3d 536, 539 (7th Cir. 2002). Under the one satisfaction rule, a plaintiff who prosecutes more than one judgment for a single loss is limited to the amount of damages awarded in the first suit. *See Saichek v. Lupa*, 787 N.E.2d 827, 833 (Ill. 2003); *see also McDermott v. AmClyde*, 511 U.S. 202, 218 (1994). In a tort action, "a payment by one tortfeasor diminishes a plaintiff's claim against all other tortfeasors responsible for the same harm in order to ensure that the plaintiff receives only one satisfaction for any one injury." *Hentze v. Unverfehrt*, 604 N.E.2d 536, 541 (Ill. App. Ct. 1992). "…[A] plaintiff's claimed damages are to be reduced by any payments he has received in compensation for the same harm or injury. The key here is same harm or injury." *Id.*

Plaintiffs did not sue Defendants for negligence arising from the underlying accident. Rather, Plaintiffs claims were based solely on Defendants' alleged misrepresentation in failing to disclose their insurance policies in the underlying action. The injury at the heart of the underlying action was negligence, whereas the injury in the present case was the harm caused by Defendants' fraud and misrepresentation. These injuries are not identical and the one satisfaction rule does not apply. Therefore, SIAC is not entitled to a setoff from the Washington State litigation or the settlement of the 2007 underlying action.

That said, SIAC may be entitled to a $1,200,000 setoff – the amount of Plaintiffs' settlement value with ETS in this case. Illinois law "protects nonsettling defendants from paying more than their *pro rata* share of the final damage judgment and reflects a public policy

protecting the financial interests of nonsettling tortfeasors." *Zivitz*, 279 F.3d at 539–40; *see also* 740 ILCS 100/2(c). Nonsettling tortfeasors, however, are entitled to a setoff only for damages that are awarded for the same injury for which the settling defendants compensated the plaintiff. *Pasquale v. Speed Prods. Engineering,* 654 N.E.2d 1365, 1382 (1995).

Although SIAC may be entitled to a setoff, it has not moved for leave to amend its pleadings to assert a counterclaim for setoff as to Plaintiffs' settlement with ETS. Federal Rule of Civil Procedure 13(b) provides, "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory," and "Fed. R. Civ. P. 15(b) allows the pleadings to be amended to conform to the evidence presented at trial even after judgment." *Rosario v. Livaditis*, 963 F.2d 1013, 1022 n.4 (7th Cir. 1992). Accordingly, SIAC's motion for setoff as to Plaintiffs' settlement with ETS is denied without prejudice at this time.

## CONCLUSION

For the foregoing reasons, Southern Illinois Asphalt Company, Inc.'s combined post-trial motions are **DENIED in their entirety**.

**IT IS SO ORDERED.**

**DATED: October 29, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**