**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

LILIYA TURUBCHUK, *et al.*,           )
                                      )
                Plaintiffs,           )
                                      )
        v.                            )          Case No. 3:12-cv-00594-JES
                                      )
SOUTHERN ILLINOIS ASPHALT             )
COMPANY, INC.,                        )
                                      )
                Defendant.            )

# <u>ORDER & OPINION</u>

This matter is now before the Court[1] on Defendant Southern Illinois Asphalt Company's

Motion (Doc. 469) to Dismiss for Failure to State a Claim, Plaintiffs' Response (Doc. 472)

thereto, and Defendant's Reply (Doc. 473). For the reasons set forth below, Defendant's Motion

(Doc. 469) is granted, and this action is dismissed with prejudice.

## BACKGROUND

This matter comes before the Court upon remand from the United States Court of

Appeals for the Seventh Circuit. *Turubchuk v. S. Ill. Asphalt Co., Inc.*, 958 F.3d 541 (7th Cir.

2020). Following the remand, Plaintiffs filed a Third Amended Complaint ("TAC") asserting

eight state law claims. *See generally* Doc. 463. Defendant, Southern Illinois Asphalt Company

("SIAC"), filed the instant Motion to Dismiss, arguing that Plaintiffs fail to state a claim for

negligent misrepresentation under Illinois law and Plaintiffs should not be able to revive other,

previously dismissed causes of action or add new claims to the suit at this stage of the litigation.

*See generally* Doc. 469. These issues have been fully briefed, but a thorough summary of the

---

[1] District Judge James E. Shadid, of the Central District of Illinois, sitting by designation. *See* Doc. 458; 28 U.S.C. § 292(b).

prior district court and appellate proceedings is necessary prior to detailing the parties' positions and addressing their arguments.

**(1) The Underlying Lawsuit**

The genesis of this case arose out of a vehicle accident in Southern Illinois. On August 21, 2005, six members of the Turubchuk family were traveling across the United States to attend a funeral on the East Coast when their van slipped off the steep edge of the roadway and crashed violently. Aleksey Turubchuk died from the accident and the others suffered significant injuries. *Turubchuk*, 958 F.3d at 545.

The location where the accident occurred was in a construction zone. E.T. Simonds Construction Company ("ETS") and SIAC had formed a joint venture to perform the repaving work for the State of Illinois. In March of 2007, Plaintiffs—through their attorney, Komron Allahyari—filed a lawsuit in the Southern District of Illinois against ETS and SIAC alleging the Defendants' negligence caused the crash. Shortly after the litigation was initiated, Allahyari spoke with Defendants' attorney, Richard Green. Plaintiffs allege that Green informed Allahyari the two companies were operating as a joint venture and were insured under a $1 million liability insurance policy. Either prior to or after the call, Allahyari sent a 30-day time-limited settlement demand to Green. Around the same time, Green sent Allahyari Defendants' initial disclosures pursuant to Federal Rule of Civil Procedure 26. In his initial Rule 26 disclosure, Green disclosed the joint venture's $1 million policy but did not list any policy of insurance for the individual companies. *Id*.

ETS and SIAC agreed to the settlement and Plaintiffs signed a release of all claims against Defendants individually and as a joint venture. Also included in the release was a "non-reliance clause" whereby the Plaintiffs agreed they were not relying on any statements by the

parties' attorneys. The lawsuit was eventually dismissed after the Court approved the settlement agreement in February 2008. *Id*. at 545–46.

**(2) The Second Lawsuit**

At some point after the conclusion of the first lawsuit, Plaintiffs learned ETS and SIAC carried their own separate liability policies providing potential coverage for nearly $60 million. In 2012, Plaintiffs filed this action, alleging intentional misrepresentation, negligent misrepresentation, fraudulent concealment, and constructive fraud, among other claims. *See* Docs. 2, 30. The gist of Plaintiffs' complaint was that Defendants concealed the actual available insurance coverage when attorney Green stated in his initial Rule 26 disclosure that the joint venture had a single $1 million liability insurance policy and that he should have disclosed the companies' individual policies as well. Had he done so, Plaintiffs allege, attorney Allahyari would not have demanded only $1 million or he would have withdrawn the demand letter. *Turubchuk*, 958 F.3d at 545–46.

Over the course of the next seven years, the parties made numerous motions and the district court made numerous rulings. When confronted with cross motions for summary judgment, the district court granted Plaintiffs' motion in part and found as a matter of law that: (1) Defendants' failure to identify and provide their individual insurance policies with their initial disclosures or at any time before settlement violated Fed. R. Civ. P. 26, and that the undisclosed policies would have afforded coverage for Plaintiffs' claims; and (2) no joint venture agreement existed between the construction companies based on the court's reading of that agreement. *Id*. at 546. At that time, the district court found material disputes of fact regarding the negligent

misrepresentation claim.[2] Specifically, the court found factual disputes regarding whether Defendants intended to induce Plaintiffs to settle, whether Plaintiffs relied on Defendants' misrepresentations, whether such reliance was justifiable, and the existence and extent of damages. The court also found the release in the settlement agreement did not bar Plaintiffs' claims. *Id*. at 546.

With respect to the joint venture, the court ultimately decided a joint venture did not exist between ETS and SIAC under Illinois law and therefore the joint venture exclusions in Defendants' individual insurance policies were inapplicable to the claims raised by Plaintiffs in the first suit. *Id*.

Two experts were at issue in this case. Defendants retained Patrick Murphy, a retired federal judge with 16 years of experience as a federal district judge and 25 years of experience in private practice. Plaintiffs recruited Allahyari, their counsel in the first lawsuit. He had practiced law for 20 years before resigning in lieu of disbarment for acts of dishonesty, fraud, deceit, or misrepresentation. Both experts offered opinions relying on the same information. *Id*. at 554–55. Murphy opined on Defendants' potential liability and the settlement value in the underlying case; Allahyari opined on Green's state of mind when he disclosed the $1 million policy. The district court eventually excluded Murphy from testifying at all. Allahyari, on the other hand, was

---

[2] Much of the discussion in this case focuses on the negligent misrepresentation claim because Plaintiffs voluntarily dismissed their other causes of action on the eve of trial, electing to proceed to a jury trial only on that one claim. The elements of a negligent misrepresentation claim in Illinois are:

(1) a false statement of material fact,
(2) carelessness or negligence in ascertaining the truth of the statement by the party making it,
(3) an intention to induce the other party to act,
(4) action by the other party in reliance on the truth of the statements,
(5) damage to the other party resulting from such reliance, and
(6) a duty on the party making the statement to communicate accurate information.

*Turubchuk v. S. Illinois Asphalt Co., Inc.*, 958 F.3d 541, 547 (7th Cir. 2020) (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 300 Ill.Dec. 69, 843 N.E.2d 327, 332 (2006)).

allowed to speculate on Green's state of mind. *Cf.* Fed. R. Evid. 602. Further, Defendants were prohibited from questioning his credibility or qualifications. *Cf.* Fed. R. Evid. 702.

Other rulings the district court made in limine included excluding evidence: (1) relating to the facts of the accident and Defendants' liability in the underlying case based on a lack of relevance to the settlement of the underlying case or to Plaintiffs' damages in this litigation; (2) that Allahyari had resigned his law license in lieu of disbarment for acts of dishonesty, fraud, deceit, or misrepresentation; (3) that Allahyari's actions in the first suit violated an attorney's standard of care or were unreasonable; and (4) that Green acted reasonably in the underlying case.[3] *Id.* at 547.

The case proceeded to trial on the negligent misrepresentation claim with all but the issues of inducement and damages already decided as a matter of law by the court. On the first day of trial, ETS settled with Plaintiffs and are no longer a party to this litigation. There were two witnesses at trial. Allahyari testified in person and portions of Green's deposition were read to the jury. The focus of the testimony centered on the interactions between Green and Allahyari shortly after the complaint was filed in the first suit. Allahyari claimed Green called him the day before he made the $1 million demand; Green said the call came after. Allahyari testified he made the demand based off Green's representations in the phone call (and later the Rule 26 disclosures) that only $1 million was available in insurance coverage, and that he would have demanded more if the additional policies had been disclosed. Green stated he was retained to represent the joint venture, the phone call took place after he received the demand letter, Allahyari was adamant that Plaintiffs wanted $1 million within 30 days, and Allahyari never asked if the individual companies had separate insurance policies. Further, Green stated he was

---

[3] The district court later ruled Green failed to make a reasonable inquiry into the existence of all potentially applicable insurance policies. *Id.* at 547.

unaware of other insurance policies and, given the quick policy-limits demand, he did not make additional inquiries about other insurance because Defendants accepted Plaintiffs' settlement demand. *Id*. at 548.

The jury returned a verdict in the amount Allahyari claimed was the real value of the underlying lawsuit, $8,169,512.84. The district court denied Defendants' post-trial motions and Defendants subsequently appealed. *Id*.

### (3) The Appeal

The Seventh Circuit found the district court committed numerous errors over the course of the litigation. Each is summarized below.

#### (a) Negligent Misrepresentation Claim Based on Rule 26

##### (i) Duty

At trial, Plaintiffs proceeded on a theory that Rule 26 of the Federal Rules of Civil Procedure imposed a duty on Green to communicate accurate information. On this issue the Seventh Circuit began its analysis by remarking on the dearth of case law imposing a duty of care based on a Federal Rule of Civil Procedure. "No authority establishes the federal rules as a predicate for a state law negligence claim. Rather, the rules themselves speak to their violation, *see, e.g.,* FED. R. CIV. P. 11, 26(g), and 37, or a statute does so by implication. *See* 28 U.S.C. § 1927. Violation of the federal rules has not been policed by permitting them to serve as the duty component of a state law negligence claim." *Id*. at 549.

Next, the Seventh Circuit noted that existing authority tended to undermine Plaintiffs' argument regarding the duty element of their negligent misrepresentation claim. *See Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006) (holding that the Federal Rules of Civil Procedure do not create duties on

which an opposing party may base a negligence claim); *Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017) (finding, in the context of a negligent misrepresentation claim based on a failure to respond to an interrogatory, that the duty of care runs from attorney to client and only to third parties when an attorney is hired for that specific purpose). Applying *Living Designs* and *Roppo*, the Seventh Circuit found "it was legal error for the district court in the second lawsuit to allow plaintiffs' negligence claim to proceed when it relied on a Federal Rule of Civil Procedure for a duty of care." *Id.* at 550. Finally, although the appellate court noted that the existence of a duty is a question of law appropriate for resolution by the district court, it noted that in this case the duty was "rooted in an incorrect source." *Id.*

### (ii) Negligence

The district court also found SIAC was negligent as a matter of law by violating Rule 26 in not identifying its individual insurance policies within its initial disclosures and before settlement. On this issue, the appellate court reasoned as follows:

> On a negligence claim, the jury usually determines whether a defendant has breached a duty. *Fulk*, 22 F.3d at 125. Drawing all reasonable inferences for the nonmovant, the reasonableness of Green's actions was up for debate. Questions remained unanswered on which the jury should have received evidence: What policy information was available to Green before he sent the initial disclosures? What was the effect of plaintiffs' time-limited demand, made before discovery had begun, on what Green was obligated to disclose and when he did so? Did that time limit mean Green could stop working on the case because it had settled? Once defendants accepted plaintiffs' demand, was it reasonable for Green not to make further discovery inquiries? By finding negligence as a matter of law, the district court precluded Southern Illinois Asphalt's ability to present evidence on these questions and to dispute whether Green acted negligently. The reasonableness of Green's actions was not "undisputed" as the district court concluded.

*Turubchuk*, 958 F.3d at 551 (concluding the district court abused its discretion by invading the province of the jury when it resolved factual disputes—like the accuracy of the disclosures and

the reasonableness of Green's inquiry—and found the elements of breach and negligence satisfied as a matter of law).

### (iii) Justifiable Reliance

The district court's finding that Plaintiffs justifiably relied upon the initial disclosures as a matter of law was likewise error.

> The question of justifiable reliance considers what the plaintiffs knew and what they could have learned through the exercise of ordinary prudence. *Soules v. General Motors Corp.,* 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E.2d 599, 601 (1980). Under Illinois law, whether reliance is justified is a question of fact that is to be viewed in light of the surrounding circumstances. *Schrager v. North Community Bank*, 328 Ill.App.3d 696, 262 Ill.Dec. 916, 767 N.E.2d 376, 387 (2002).
>
> On the insurance disclosure, in dispute is what plaintiffs could have learned if an opportunity existed to discover the truth, such as during civil discovery in the first lawsuit. If more or different facts had been discovered, reliance may or may not have been justified. The facts found also may impact the application of the "anti-reliance" clause in the release, and whether the rule of *Adler* or of *Bauer* applies. But because the district court decided this issue before trial, whether plaintiffs relied on the May 15, 2007 disclosures—and if so whether it was reasonable to do so— was never explored. The district court thus abused its discretion by deciding the element of justifiable reliance as a matter of law.

*Id*. at 552.

### (A) Joint Venture

As the Seventh Circuit recognized, "[t]he joint venture question was key to this case" because Plaintiffs' success in this lawsuit hinged on the availability of additional polices beyond the previously disclosed $1 million joint venture policy. At summary judgment, the district court found no joint venture existed between ETS and SIAC despite the existence of the companies' arrangements and written agreement because evidence regarding the degree of joint proprietorship and mutual right to exercise control over the enterprise did not meet the legal requirements for a joint venture. Because no joint venture existed, the district court reasoned, the joint venture exclusions in the individual Defendants' insurance policies did not apply. *Id*. at 552.

The district court's finding that no jointed ventured existed "was ill-fated from the beginning." *Id*. Not only did the parties agree in their pleadings that ETS and SIAC were operating as a joint venture, but the contract awarded by the State of Illinois to do the repaving work was to the joint venture; Green was hired on behalf of the joint venture, and Plaintiffs' demand letter explicitly stated they brought their claims against the joint venture. To reach the opposite conclusion, the district court disregarded the above evidence and found, based on certain clauses taken out of context from the joint venture agreement, that the companies did not exercise sufficient joint control rights over the project. "At the least, whether a joint venture existed between Southern Illinois Asphalt and E.T. Simonds presented a question of fact, and the district court erred by prematurely ruling on it as a matter of law." *Id*. at 553.

### (iv) Intent to Induce

### (A) Allahyari

The only element of the negligent misrepresentation claim to make it to the jury aside from damages was the intent to induce element. The only evidence offered by Plaintiffs to support this element was the testimony of Allahyari, who was allowed to opine as to whether Green's disclosure of only the $1 million insurance policy was done to induce settlement. On appeal, the Seventh Circuit found the admission of this evidence amounted to an abuse of discretion. First, Allahyari's testimony ran afoul of Federal Rule of Evidence 602, which requires witnesses to have personal knowledge of the matter. *See* Fed. R. Evid. 602. Moreover, the court noted that "[a]ny reliability of this evidence was vitiated by pretrial rulings which incorrectly cramped what evidence Green could offer about his phone call with Allahyari." *Id*. at 554. With respect to Allahyari's opinion testimony, the court stated:

> Allahyari also was allowed to testify as an opinion witness, including on this element. But the district court improperly excluded evidence concerning

Allahyari's credibility, including that he had resigned his law license in lieu of disbarment for alleged acts of dishonesty, fraud, deceit, or misrepresentation. *See* FED. R. EVID. 608 (witness's character for truthfulness or untruthfulness). At trial, therefore, the jury heard from an attorney recognized as an expert, but who had lost his law license under a cloud and whose qualifications and credentials could not be impeached. That attorney was allowed to give evidence on another lawyer's intent whose testimony on the same facts had been incorrectly limited. Such circumstances also constituted an abuse of discretion. And because Allahyari's testimony was the only evidence on this element of plaintiffs' claim, no other trial evidence supports the jury's verdict, which therefore must be reversed.

*Id.* at 554.

### (B) Murphy

The Seventh Circuit also contrasted the admission of Allahyari's opinion testimony with the exclusion of Murphy's testimony. After identifying the legal standard for assessing expert opinion evidence, the Seventh Circuit concluded that

Murphy's report was grounded on more than his word and presented more than a bottom line. His updated report plus appendices showed that he reviewed thousands of pages of medical records, bills, court filings and decisions, depositions with exhibits, reports, and various other pertinent information. His calculations detailed this case's settlement value and the bases for his valuation. He gave the "why" underlying his opinions, identifying and explaining five reasons for his settlement valuation of the underlying case. He analyzed the counterfactual of how this case would have come out if the companies' individual insurance policies had been disclosed and provided coverage. In that alternative scenario, he explained the reasons for his conclusions. Murphy's work was rooted in his 16 years' experience as a federal district judge and 25 years in the private practice of law, including handling many insurance and personal injury cases. This effort amply displayed the methodology Murphy employed and met the requirements of Rule 702. *Cf. Wendler & Ezra, P.C. v. Am. Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (ruling expert's *ipse dixit* conclusion inadmissible when report failed to say what software was used, what data was entered, what results were produced, and how alternative explanations were ruled out).

Indeed, the methods Murphy employed in his report did not differ from those of Allahyari. They relied on the same information, but Allahyari's opinions did not include the same level of detail as Murphy's. Allahyari also brought to bear no experience as a judge, and 20 years as a lawyer rather than Murphy's 40 years at the bar and 25 years in private practice.

While a court need not balance the opinion testimony of one party against the other, Allahyari's inclusion and Murphy's exclusion displayed a fundamental disparity in evidentiary rulings. For a time, by allowing Murphy to supplement his expert disclosure the district court recognized this incongruity. But in the end Murphy was excluded as a witness, and plaintiffs' opening statement noted this disparity. Due to Murphy's exclusion, Southern Illinois Asphalt was not allowed to present evidence about the value of the underlying case, an extreme consequence. The district court could have taken the less drastic step of striking certain opinions, which would have permitted the defendant to respond in a meaningful manner, rather than for the jury to hear only one side's opinion on damages.

Because the methodology Murphy employed met the requirements of Rule 702, the district court's exclusion of his testimony in its entirety "clearly appears arbitrary" and was an abuse of discretion. *Karum Holdings LLC v. Lowe's Co., Inc.*, 895 F.3d 944, 951 (7th Cir. 2018).

*Id.* at 555.

**(4) Conclusion**

In its summation, the Seventh Circuit noted SIAC's requests for judgment to be entered as a matter of law in its favor on Plaintiff's negligent misrepresentation claim, but declined to do so out of an abundance of caution because "[t]he type and number of errors that occurred here greatly affected the path that the second lawsuit traveled from its inception." *Id*. at 556. The Seventh Circuit's judgment provided that, "due to the number of errors before, during, and after the trial of this case, the district court's judgment is REVERSED, with costs, in its entirety and this case is REMANDED for further proceedings consistent with this opinion." *Id*.

LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). To survive a motion to dismiss, the complaint must describe the claim in

sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**DISCUSSION**

**(1) Negligent Misrepresentation Claim**

In their Third Amended Complaint ("TAC"), Plaintiffs allege generally the following:

18. Attorney Richard Green was hired by Defendant for the purpose of benefitting the Plaintiffs by coordinating the settlement of their claims for damages against Defendant and ETS.

21. Federal Rule of Civil Procedure 26(1)(1)(A)(iv) imposed a duty upon Defendant and ETS in the Underlying Action to disclose "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

27. …. Defendant and ETS had an affirmative duty to disclose these additional policies under FRCP 26(1)(1)(A)(iv).

Doc. 463, at 4, 6. No allegation relating to duty is found under the "negligent misrepresentation" section of Plaintiffs' TAC.

In its Motion to Dismiss, Defendant argues the only duty alleged in the TAC is an alleged duty arising from Rule 26. The Seventh Circuit held as a matter of law that Plaintiffs may not rely on a Federal Rule of Civil Procedure to establish a duty of care in a negligence action. Doc. 469, at 13; *Turubchuk*, 958 F.3d at 550. Additionally, Defendant argues the Seventh Circuit's discussion of *Roppo* forecloses any argument that SIAC or ETS's counsel owed a duty to Plaintiffs in the underlying action. This is so, Defendant argues, because an attorney ordinarily

12

owes no duty to third parties unless there is a clear indication that the attorney's representation is intended to directly confer a benefit upon a third party, and there was no such indication in this case. *Id*. at 14 (citing *Turubchuk*, 958 F.3d at 550; *Roppo v. Travelers Comm. Ins.*, 869 F.3d 568, 592 (7th Cir. 2017)).

In their Response, Plaintiffs argue Green's representation of SIAC falls within the narrow exception to the general rule that an attorney ordinarily owes no duty to third parties because "Plaintiffs have alleged attorney Richard Green was hired for the purpose of benefitting the Plaintiffs by coordinating settlement of their claims against Defendant and ETS." Doc. 472, at 11. Further, Plaintiffs allege that SIAC and/or ETS ratified attorney Green's actions by signing the release (citing *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 278–79 (Ill. 2012)), but fail to explain the relevance of that allegation or case to the issues in this litigation. *Id*. at 11. In making their argument, Plaintiffs concede that the question of whether the law imposes a duty on a defendant in a negligence action may be determined as a matter of law by the court. *Id*. at 10.

As the Court reads the Seventh Circuit's Opinion, this matter was remanded to this Court to give Plaintiffs a final opportunity to allege the existence of a duty on behalf of Defendant as part of Plaintiffs' negligent misrepresentation claim. Plaintiffs have now done so, relying on a theory that Defendant hired its legal counsel "for the purpose of benefitting the Plaintiffs by coordinating the settlement of their claims for damages against Defendant and ETS." TAC, Doc. 463, at ¶18.

"The determination of any question of duty—that is, whether the law imposed upon the defendant the obligation to protect the plaintiff against the consequences which occurred—is a question of law, and is not for the jury." *Fulk v. Illinois Cent. R. Co.*, 22 F.3d 120, 125 (7th Cir. 1994) (quoting *Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 300 (7th Cir. 1985)). Thus,

this Court may properly decide whether Defendant owed Plaintiff any duty of care. *Turubchuk*, 958 F.3d at 550. In Illinois, an attorney "generally owes a duty of care only to his client and not to third parties." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 592 (7th Cir. 2017) (quoting *Kopka v. Kamensky & Rubenstein*, 354 Ill.App.3d 930, 290 Ill.Dec. 407, 821 N.E.2d 719, 723 (2004)). "A 'narrow exception,' however, extends an attorney's duty of care to third parties when the attorney was 'hired by the client specifically for the purpose of benefitting that third party.' " *Id*. (quoting *Kopka,* 354 Ill.App.3d at 930). Thus, "[f]or this exception to apply in adversarial proceedings, 'there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party.' " *Id*. (quoting *Pelham v. Griesheimer*, 92 Ill.2d 13, 64 Ill.Dec. 544, 440 N.E.2d 96, 100 (1982)).

Applying *Roppo* and the cases discussed therein to the allegations in Plaintiffs' TAC, the Court agrees with Defendant that Plaintiffs have not and can not state a viable claim for negligent misrepresentation. First, the sole allegation in Plaintiffs' TAC relating to duty of care— that Green was hired by SIAC to benefit Plaintiffs—is a legal conclusion devoid of factual support. The lack of factual allegations relating to this element demonstrates that Plaintiffs are unable to show a "clear indication" that attorney Green was hired for the express purpose of benefitting Plaintiffs. *Cf. Roppo*, 869 F.3d at 592. In fact, *Roppo*'s discussion of this issue applies equally well in the context of this case:

> Applying the "intent to directly benefit" test to the facts alleged in the third amended complaint, it is clear that Ms. Roppo is not a direct third-party beneficiary. Ms. Roppo asserts that she was injured by Mr. Hitchings's negligence during his representation of Block in the underlying personal injury action. In that context, Mr. Hitchings's primary duty was to protect the interests of his client, Block, against the claims asserted by Ms. Roppo. Although Ms. Roppo certainly may have benefitted from part of Mr. Hitchings's representation of Block, in the same way that the Ray children may have benefitted from the divorce lawyer's representation of their mother, Ms. Roppo was not *a direct third-party beneficiary* of Mr.

Hitchings's relationship with Block. Mr. Hitchings's services were not secured for her benefit.

*Roppo*, 869 F.3d at 592–93. Based on the above, Plaintiffs have failed to allege a proper duty as a matter of law, and thus fail to state a cognizable claim for negligent misrepresentation. Accordingly, Defendant's Motion to Dismiss must be granted as it relates to Plaintiffs' negligent misrepresentation claim.

**(2) The Remaining Claims in the TAC**

Next, Defendant asks the Court to dismiss Plaintiffs' remaining claims because they were either previously dismissed or are completely new. By way of background, on March 23, 2018, immediately prior to trial, Plaintiffs voluntarily dismissed three of the four remaining claims in the Second Amended Complaint and elected to proceed to trial only on the negligent misrepresentation claim. *See* Doc. 405, at 3–4 ([Mr. Boock:] "We intend to submit only on the negligent misrepresentation claim, which would mean we would be dismissing, I believe, Counts 1, 2, and 4 of the Second Amended Complaint, which are the counts for intentional misrepresentation, fraudulent concealment, and constructive fraud."). In their TAC, Plaintiffs allege: (1) fraudulent inducement; (2) fraudulent concealment; (3) a violation of the Consumer Fraud Act; (4) promissory estoppel; (5) equitable estoppel; (6) negligent misrepresentation; (7) intentional misrepresentation; and (8) abuse of process. Doc. 463.

**(a) Plaintiffs' New Claims**

The Court will first address Defendant's challenge to the claims asserted for the first time in Plaintiffs' TAC. Doc. 469, at 23–27. These are: (1) fraudulent inducement; (3) a violation of the Consumer Fraud Act; (4) promissory estoppel; (5) equitable estoppel; and (8) abuse of process. Doc. 463. Defendant argues, and Plaintiffs do not dispute, that the above causes of action have either a two, three, or five-year limitations period. Docs. 469, at 23; 472, at 17–18. In

15

Defendant's view, Plaintiffs' new claims are untimely because they are all based on the allegation that Green failed to disclose the existence of other insurance policies to Allahyari, and their claims accrued at the latest in May 2012—well beyond the two, three, or five-year limitations periods. In their Response, Plaintiffs argue their new claims relate back to the time of the original complaint. Doc. 472, at 22. Further, Plaintiffs argue the discovery rule applies in this case to delay the commencement of the statute of limitations because "Plaintiffs had no way of knowing Defendant SIAC had fraudulently withheld information regarding available insurance proceeds, thereby causing them injury. As Plaintiffs were unable to ascertain their injury until filing the instant action and performing additional discovery, the statutes of limitation at issue must be relaxed so that Plaintiffs may pursue their claims in this matter, and the Motion to Dismiss must be denied on these grounds." Doc. 472, at 23 (citing *Healy v. Owens-Illinois, Inc.*, 833 N.E.2d 906, 910 (Ill. App. 1d 2005)).

While both parties intertwine their discussion of the statutes of limitation with the rules for amendment of pleadings and the relation back doctrine, the Court assumes for present purposes that the new claims would not be statutorily barred under any limitations period. Rather, the pertinent question appears to be whether Plaintiffs should be allowed to add new causes of action in their TAC when those causes of action were based on the same facts as the claims raised initially in 2012. On this issue, Defendant argues Plaintiffs have given no good reason to allow adding new causes of action after eight years of litigation in this matter. Doc. 469, at 27. Plaintiffs counter that "[t]his argument ignores the opinion and mandate of the Seventh Circuit in this case." Doc. 472, at 24. Plaintiffs go on to explain that "[p]rior to trial of this matter in March 2018, Plaintiffs dismissed without prejudice certain causes of action from amended [sic] their Second Amended Complaint pursuant to rulings made by the District Court.

The Seventh Circuit has now stated the District Court made a series of errors with regard to its rulings throughout the litigation of this case." *Id.*

Plaintiffs' argument is unconvincing for several reasons. First, Plaintiffs fail completely to explain why these new claims could not have been alleged in 2012, or at any time before the filing of the TAC in 2020. None of the district court's decisions could possibly have impacted Plaintiffs' decision regarding which claims to file in 2012, so any reliance argument by Plaintiffs does not hold water. Second, Plaintiffs act as if every ruling of the district court was made *sua sponte* and operated as a complete surprise to the parties. This argument ignores the fact that those errors were based on the district court giving Plaintiffs exactly what they asked for. *See, e.g.,* Doc. 325, at 17 ("For these reasons, Plaintiffs respectfully request this Court enter its Order striking Defendant Southern Illinois Asphalt Company, Inc.'s designation of G. Patrick Murphy as an expert witness, striking in its entirety Murphy's Second Supplemental Report, forbidding G. Patrick Murphy from testifying as an expert witness in this matter, and for such other and further relief as the Court deems necessary under the circumstances."); Doc. 281, at 20 ("WHEREFORE, Plaintiffs pray this Court enter an Order denying Defendant Southern Illinois Asphalt Company, Inc.'s Daubert Motion Regarding the Expert Testimony of Komron Allahyari, and allow Komron Allahyari to testify at the trial of this matter as to any Opinions put forth in Plaintiff's Amended Designation of Expert Witnesses.").

Here, Plaintiffs have failed to provide any justification for why these newly asserted claims were not raised earlier. In the interim, eight years of litigation have ensued. Thus, the new claims were unduly delayed. *See J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 347 (N.D. Ind. 2010) ("Undue delay alone is insufficient to support denial of leave to amend, but it may militate towards a denial when combined with another factor, often

unfair prejudice to the nonmoving party."). Further, allowing Plaintiffs to add multiple new claims at this stage of the litigation will unfairly prejudice Defendant. Even if these new claims arise out of the same factual allegations as the prior claims, allowing their addition at this stage will force Defendant to relitigate from the beginning a substantial portion of this case. "There must be a point at which a plaintiff makes a commitment to the theory of its case." *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993). Here, it is enough to say— after years of litigation and a remand—that point has long passed. Accordingly, the Court grants Defendant's Motion as it relates to the following claims in Plaintiffs' TAC and dismisses with prejudice Plaintiff's claims of: (1) fraudulent inducement; (3) a violation of the Consumer Fraud Act; (4) promissory estoppel; (5) equitable estoppel; and (8) abuse of process.

### (b) The Previously Dismissed Claims

Defendant also moves to dismiss Plaintiffs' claims of (2) fraudulent concealment and (7) intentional misrepresentation. Doc. 469, at 17. Recall that prior to trial, Plaintiffs voluntarily dismissed these claims and elected to proceed to trial only on the negligent misrepresentation claim. *See* Doc. 405, at 3–4 ([Mr. Boock:] "We intend to submit only on the negligent misrepresentation claim, which would mean we would be dismissing, I believe, Counts 1, 2, and 4 of the Second Amended Complaint, which are the counts for intentional misrepresentation, fraudulent concealment, and constructive fraud."). In their Response, Plaintiffs admit they "made the strategic decision to dismiss those claims due to the evidence they would need to present based on the trial court's rulings," but argue they should be allowed to revive those claims in the interest of justice. Doc. 472, at 15.

Resolution of this issue first requires the Court to ascertain the procedural rule governing dismissal of *claims*. Federal Rule of Civil Procedure 41 speaks of dismissing "an action," not a

claim, and therefore does not apply. *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) ("Rule 41(a) does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'— which is to say, the whole case."). Rather, it is Rule 15 which allows a plaintiff to add or drop claims or parties. *Id*. Thus, when Plaintiffs voluntarily dismissed their fraudulent concealment and intentional misrepresentation claims, they effectively amended their complaint to remove those causes of action from the case. *See Taylor*, 787 F.3d at 858. Because Plaintiffs' attempt to revive their previously dismissed claims are properly viewed under the lens of Rule 15, the analysis with respect to these two claims is similar to the analysis regarding Plaintiffs' newly asserted claims discussed above.

If Plaintiffs' failure to add new causes of action during much of the last decade constitutes undue delay, it is hard to imagine Plaintiffs' present attempt to revive claims previously dismissed as part of an intentional, strategic decision should fare any better. In fact, Plaintiffs admit their decision to dismiss was based on convenience. *See* Doc. 472, at 15 ("Plaintiff's made the strategic decision to dismiss those claims due to the evidence they would need to present based on the trial court's rulings."). In short, nothing prevented Plaintiffs from litigating these claims in the first trial. Thus, allowing Plaintiffs to revive these previously dismissed claims and requiring Defendant to relitigate them again prejudices Defendant. Again, "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case." *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993). Here, Plaintiffs made that decision on the eve of trial when they decided to not pursue claims because they did not want to present the evidence necessary to try those claims. They did so strategically, knowing that, as in every case, the possibility existed that a potential judgment would be reversed on

appeal. Accordingly, the Court grants Defendant's Motion as it relates to the claims in Plaintiffs' TAC alleging (2) fraudulent concealment and (7) intentional misrepresentation.

In concluding this portion of the Opinion, the Court acknowledges the Seventh Circuit declined to enter judgment in favor of SIAC at the appellate level, instead opting to reverse the case in its entirety and remand "for proceedings consistent with this opinion in order to secure a just determination of the parties' dispute." *Turubchuk*, 958 F.3d at 556. A fair reading of the appellate court's directive might mean this matter was remanded to this Court to give Plaintiffs a final opportunity to allege the existence of a duty on behalf of Defendant as part of Plaintiffs' negligent misrepresentation claim. *See supra*, at 13. However, the mandate could also be read more broadly to allow Plaintiffs to relitigate some or all of its claims or to resume the litigation from some earlier point in time, before the errors identified above "greatly affected the path the second lawsuit traveled from its inception." *Id*.

If the latter interpretation of the Seventh Circuit's opinion is correct, the Court believes Plaintiffs have still failed to persuade the Court that unwinding this litigation is justified. Specifically, while Plaintiffs urge that the Seventh Circuit's opinion "lends credence to the position this entire case should be re-litigated from the point of Plaintiffs' original Complaint," Plaintiffs fail in their Response to offer anything of substance to support their position. If, in contrast, Plaintiffs had used their Response to point to a ruling made by the district court that was an error uninvited by Plaintiffs' request and explain how the effect of that error "affected the path the second lawsuit followed," *id*., this Court's analysis might have been different. But Plaintiffs have made no such attempt to do that here, instead relying simply on the language of the mandate and insisting they are entitled to relitigate every issue anew. For these reasons, the Court believes dismissal of the entire action with prejudice is the correct disposition of this case.

**(3) Remaining Issues**

Prior to this matter being reassigned, Defendant filed a Motion for Approval of Costs Ordered as Sanction Against Plaintiffs. Doc. 413. Defendant requests the Court approve costs in the amount of $5,401.29, representing the costs incurred in taking Allahyari's supplemental deposition. Plaintiffs filed a Response opposing the costs because a duplicate charge for the video was included and Plaintiffs believe the travel expenses were excessive. Doc. 415. Defendant later renewed its Motion. Doc. 441. Defendant offers no explanation for its inclusion of two sets of DVDs (totaling $920), but it is also unclear whether each copy was $460, or whether the additional copy added anything to the cost at all. The Court generously assumes Plaintiff is correct on this issue and reduces the award by $460. Plaintiff's remaining objection asserts Defendant's counsel's travel time and expenses—$638 for 5.8 hours of travel time and $123.05 for milage for a 230-mile round trip—were excessive. That objection is meritless; Defendant's proposed costs are reasonable and the Court will not indulge Plaintiffs by reviewing Defendant's billing charges with a microscope. Defendant's Motions are granted in part, and the Court approves costs in the amount of $4,941.29.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 469) is granted, Defendant's Motions (Docs. 413, 441) are granted in part, Defendant is awarded costs in the amount of $4,941.29, and this action is dismissed with prejudice. The Clerk is directed to close the case.


Signed on this 27th day of April, 2021.

s/ James E. Shadid
James E. Shadid
United States District Judge